The City Bank of Macon, plaintiff in error, *vs.* Effie Kent, defendant in error.

(Jackson, Judge, having been of counsel, did not preside in this case.)

1. When an agent, having a power of attorney to collect any and all moneys due or to become due his principal from any source, and especially a certain described claim, and to give, for his principal and in her name, any and all receipts and acquittances necessary or proper on receiving, or in order to receive, any and all such moneys, and also to apply portions of such moneys to debts of the principal, and generally to do and perform any other acts in and about said business that may be deemed necessary or proper, deposits in bank, to the principal's credit, some of the money arising from the claim specially mentioned in the power, and afterwards, during the existence of the agency, draws out the deposit on checks purporting to be signed by the principal, and believed by the officer of the bank to be genuine, the bank is discharged, whether the checks be in fact genuine

The City Bank of Macon *vs.* Kent.

. or not.  They are, in effect, receipts and acquittances in the name of the principal.

2. The agency continues so long as the power is not revoked and the business is not withdrawn from the agent's control.

3. If the authority, in itself, were insufficient, and if ratification by the principal were necessary, ratification could take place after the knowledge by the principal that the money was drawn out by the agent, though she were ignorant that he had used false checks to obtain it.  On the question of discharge or no discharge to the bank, the receipt of the money from the bank by the agent would be the act needing ratification, and not the execution of the checks.

4. Ratification, if requisite, might be inferred from receiving money from the agent with knowledge that he had received it from the bank, or from consenting, with like knowledge, to its use by him or by a borrower from him, the principal being aware that it was her money and drawn in some way from the bank.

5. Aside from any question of authority, ratification or knowledge, any of the money paid by the bank to the agent, which the latter delivered to the principal, or retained with her consent, or disposed of with her approbation, would be a credit to the bank on the deposit account, unless thus to follow the fund and apply it would violate some peculiar equity.

6. Receipts in full by principal to agent are evidence tending to prove ratification of all collections, disbursements and appropriations which had taken place when the receipts were given.  Such documents are open, however, to explanation, and when explained, what they prove in the end is for the jury to decide, and not for the court.

7. If checks of various amounts are mixed together without the fault of either party, two being genuine and the rest false, and if the genuine cannot be distinguished from the others by any evidence before the jury, or which the party claiming the benefit of the checks could produce, the jury should not disallow all the checks for want of greater certainty in identification, but should apply the principle of average, or some other, so as to approximate justice.  It would certainly be safe to allow the two checks of least amount.

8. Testimony upon a given question may be satisfactory, though not wholly unimpeached.

9. In charging the jury how witnesses may be impeached, it is error to specify, as one of the modes, evidence of general bad character, where there is no such evidence in the case.  It is also error, to charge, in general terms, that a witness may impeach himself "by confession to infamous conduct, which, if true, would exclude him from respectable society." What respectable society might do, but has not yet done with a person, is not a standard by which to test his credibility.

10. In a civil case, when evidence is conflicting in respect to a fact set up by the defendant, and the jury are consequently in doubt, they are not obliged, as matter of law, to give the benefit of the doubt to the defendant.

The City Bank of Macon *vs.* Kent.

11. The judge may caution the jury to discriminate the evidence from all other statements before them.

12. Where the action is upon contract, indictments still pending, found by the grand jury after the suit was brought, are not relevant, though the person indicted be a principal witness for defendant, and though the offenses charged be forgery and larceny by the witness in respect to the money constituting the consideration of the debt sued for.

13. When the judge can find no obscurity in the date of an instrument, he may say so, and read the date aloud in the hearing of the jury, the instrument being in evidence.

14. The judge may speak with a witness in an under-tone, in presence of the jury.

15. The judge may ask counsel a pertinent question during the cross-examination of an expert, even though the effect be to put the witness on his guard by disclosing to him a fact which the counsel wished him not to know.

16. When even a party is under cross-examination, the court may exercise a sound discretion in requiring counsel to make the relevancy of his questions apparent.

17. Where there is an order for the separation of the witnesses, exceptions therefrom as to witnesses not parties to the case, are discretionary with the court; and, in this instance, the discretion was not abused, in refusing to make the exception requested.

18. Where counsel, demanding that the whole charge shall be in writing, presents certain written requests to charge, if the requests are given with additions or modifications, these also must be reduced to writing and read to the jury (*provided the counsel requires it*) so that the entire charge, precisely as given, may appear. It is, however, the right of the court to decline to notice any request which wants addition or modification to render it appropriate.

19. The jury having made a verdict, and then dispersed by previous consent of counsel and with leave of the court, it is not proper to poll them when the verdict is afterwards returned and read.

20. Jurors will not be heard by affidavit, to impeach their verdict.

21. If it be error for the court to refuse to hear the motion for new trial read over at the term when the rule *nisi* is granted, that error, unless excepted to *pendente lite*, cannot be examined upon a bill of exceptions sued out after the motion is disposed of at the succeeding term.

22. It is much the better practice for the judge, when a motion for new trial is presented, to settle at once the truth of its recitals; but he is not legally bound to do so, as the motion is mere pleading, and is what the counsel chooses to make it.

23. On the argument of the motion, although the judge may know and announce that some of the recitals are incorrect, he is not legally bound to point out the errors, but may adjudicate upon the motion as he finds it, noting the errors, if he shall think proper, in his final order, or in his certificate to the bill of exceptions.

24. It is irregular for the judge, in disposing of a motion for new trial, to examine a bailiff, on oath or otherwise, out of the presence of the parties or their counsel, with any view to aiding the judicial mind on a question of fact embraced in the motion.

25. As to those elements of the record which are suggestive of unseemly conflict between counsel and the court, see *12 Georgia Reports, 330, 216, 217; 18 Ibid., 394, 395; 11 Ibid., 57, 538, 539, 629, 630, 631; 10 Ibid., 409 to 413.* A reviewing court, as a general rule, can deal with such matters only by citing that law of courtesy which all members of the profession, whether at the bar or on the bench, may be supposed to recognize and habitually observe, and on breaches of which, when they occur, every tribunal may be deemed competent to decide for itself, and willing to decide justly.

Principal and agent. Ratification. Banks. Evidence. Receipts. Jury. Charge of court. Witness. Practice in the Superior Court. Verdict. New trial. Practice in the Supreme Court. Attorneys. Before Judge HILL. Bibb Superior Court. October Term, 1875.

Effie Kent brought complaint against the City Bank of Macon, on an account containing but one item, as follows :

"May 15th, 1872—To amount of cash deposited in said bank to her credit, $4,000 00."

The defendant pleaded as follows :

1st. The general issue.

2d. That said deposit was made by Benjamin F. Griggs, who, at the time, held a general power of attorney under the hand and seal of plaintiff, for the management of said money; that said sum has been fully paid out to said attorney, under checks signed by the plaintiff, payable to said attorney or bearer; that such payment is a full discharge of the defendant.

3d. That said power of attorney was exhibited by Griggs to the defendant at the time of making said deposit, and was unrevoked at the time of the payment of the aforesaid checks by the defendant; that such payments, therefore, operated as a full discharge to the defendant.

4th. That after said money was thus paid out to said attorney in fact, he fully accounted with the plaintiff for the same, and the latter ratified the payment to him, and had a complete and final settlement with him as to his liability on account of such money.

The City Bank of Macon *vs.* Kent.

The evidence, which was voluminous, made, in substance, the following case:

Benjamin F. Griggs was the family physician of the plaintiff. His relations with her were of the most intimate character. He attended her husband in his last sickness, and after his death, became her agent for the collection of $5,000 00 due to her on policy of insurance on the life of the deceased, under the following power of attorney:

"STATE OF GEORGIA—Bibb County:

"Know all men by these presents, that I, Effie Kent, widow of James M. Kent, deceased, of said county and state, do hereby, in consideration of $1 00 to me paid, the receipt whereof is hereby acknowledged, do constitute and appoint Dr. Benjamin F. Griggs, also of said county, my true and lawful agent and attorney in fact, for me and in my name, place and stead, to apply for and collect any and all moneys due, or to become due to me, from any source, and especially the amount claimed by me from the Continental Life Insurance Company, of the city of New York, on the policy of said company held by me, insuring the life of the said James M. Kent, now deceased, and to give for me and in my name, any and all receipts or acquittances necessary or proper on receiving, or in order to enable him to receive any and all such moneys, or any part thereof; and also to apply portions of such moneys, after being received by him, to debts due by me, taking receipts therefor, and generally to do and perform any other act or acts in and about my said business that may be deemed necessary or proper. Hereby ratifying whatever my said attorney shall do in the premises by virtue of these presents.

"In testimony whereof, I have hereto set my hand and affixed my seal, this 5th day of April, in the year A. D., 1872.
    (Signed)                              " EFFIE KENT.
" Signed, sealed and delivered in presence of
    "D. W. Hammond,
    "R. S. Lanier."

The plaintiff states that Griggs proposed to attend to this business for her as a brother, charging no compensation therefor; Griggs, on the contrary, asserts that plaintiff requested him to collect the money for her, offering at the same time to allow him for his services one-half the net proceeds after paying all the expenses of collection, etc., out of the fund.

Griggs collected from $4,900 00 to $5,000 00 on the policy, $4,000 00 of which he deposited, on May 23d, 1872, in the name of plaintiff, with the defendant. It is for this sum that the suit is brought. At the time the deposit was made, Griggs showed to the cashier of defendant the above power of attorney, and stated that it was under the authority of such instrument that he was acting. The defendant produced six checks, aggregating $4,000 00, purporting to have been signed by plaintiff, which were paid by it. These checks were presented by Griggs and the money paid to him. The plaintiff denied that she had signed any of these checks, and upon this point the evidence was distressingly conflicting. But the overwhelming weight of testimony showed that the signatures would have been pronounced by any bank officer as genuine. If the checks were spurious the forgery was so well executed that the most expert would have been deceived. The teller and cashier of defendant both testified emphatically to the fact that when plaintiff came to them for her money, before suit brought, she admitted that she had signed two of the checks, but did not specify which. This the plaintiff denies, and a witness who accompanied her, states that he has no recollection of such admission, though it might have been made.

The defendant further insisted that even though the checks were forgeries, and even though Griggs had no authority to draw the money from bank, yet that plaintiff had ratified his illegal and unauthorized acts in this particular, in receiving all or a portion of the money thus drawn out from him, in authorizing him to lend it to various persons at interest, and in accepting his note for a part thereof, or in receiving payments on such note after she was informed that it was given for a portion of the money thus drawn out of bank. As to

The City Bank of Macon *vs.* Kent.

each of these acts, from which defendant sought to infer ratification, the evidence was very conflicting. Griggs swore that plaintiff knew all about the money's having been drawn from bank, and that she, with such knowledge, received about $2,000 00 thereof, in addition to the $900 00 not deposited. This the plaintiff denies. Griggs further stated that plaintiff importuned him to lend out the money for her benefit. This also the plaintiff denies. Griggs further testified that he placed in the hands of Lanier & Anderson, attorneys, a note on himself, payable to the order of plaintiff, for $1,200 00, dated September 25th, 1872, and due one day after date, which covered an amount loaned to him by the plaintiff after he had settled in full for her insurance money, upon which he was to pay her the interest, and the principal as she might need it from time to time. That this was done with the knowledge and consent of the plaintiff. Whether plaintiff knew at the time this note was placed in the hands of Messrs. Lanier & Anderson by Griggs, that it represented a portion of the money drawn from bank, or even that it had been placed there at all, the evidence is conflicting. But two payments were made on this note, each of $50 00, and the testimony indicates that even if the plaintiff did not know that this paper represented a portion of her insurance money when the first payment was made, she certainly did at the time of the last. Failing in these grounds of defense, the defendant undertook to show that Griggs had accounted with plaintiff for all of the money thus drawn from bank, and for this purpose introduced the two following receipts:

"MACON, GA., August 27th, 1872.

"Received of Dr. Benjamin F. Griggs $4,900 00, less certain amounts paid out by him on my account and by my order, in full of the amount collected by him as my attorney in fact, from the Continental Life Insurance Company of New York, on a policy insuring the life of James M. Kent, my late husband.     (Signed)          "EFFIE KENT.
"Witness: H. J. PETER."

"MACON, September 11th, 1872.

"Received of Dr. B. F. Griggs $60 00 in full of balance in his hands as my agent, and in full of all demands of every description I have against him.

(Signed)                    "EFFIE KENT."

"Witness: PETER C. SAWYER."

Griggs testified that the first of these receipts was given in full settlement of the amount due by him to plaintiff for moneys collected; that there was then in bank to the credit of plaintiff $500 00, and he so informed her; that on the 30th of August, at her request, and on her check, he drew the remaining $500 00 from bank and handed it to her; that she returned him $200 00 of this amount, with the request that he pay certain bills for her, as she was going to Florida; that he paid the bills, and, on the 16th of September, handed to her a balance of $60 00, remaining after making the disbursements she requested, and took the receipt last above set forth. (The date of this receipt in the record is September 11th.)

The witnesses to these papers throw no light upon them. They testified as to nothing material except the execution.

Plaintiff stated that she first saw the receipt for $4,900 00 at Peter's drug store on September 16th, 1872, in presence of Mr. Peter; that she signed it a second time, on the same day, at Griggs' house, in presence of Mr. Sawyer. That Griggs read the receipt to her, on both occasions, as for $900 00. That she supposed she was signing, on each occasion, the same paper. That he paid her, on the same day, $60 00 at the train as she was about to leave for Hawkinsville. That she understood her $4,000 00 to be in bank, and that this receipt was for the disbursement of the $900 00 never deposited, the balance of which was the $60 00 paid to her by Griggs at the depot, and which he promised to bring there at the time she signed the receipt.

There were also in evidence, two indictments against Dr. Griggs, found before this suit was brought and still pending,

one of which charged him with the forgery of one of the aforesaid checks and the other with the larceny after trust delegated of the balance of the money collected from the insurance company after the deposit of the $4,000 00 in bank.

The jury found for the plaintiff the full amount sued for.

The defendant moved for a new trial upon the following grounds, to-wit:

1st. Because the court erred in refusing to allow the defendant to keep Benjamin F. Griggs in the court-room to assist in the management of the defense, under the following circumstances: Before the presentation of plaintiff's case began, defendant's counsel asked the court to have the witnesses separated. Plaintiff's counsel then asked that defendant's witnesses be also excluded. Defendant's counsel replied that the presence of Griggs was essential to them in the conduct of the defense, especially in the examination of the witnesses for the plaintiff; that the testimony in the case would be long and intricate, and the principal actors in the transaction which gave rise to the suit, were the plaintiff and said Griggs; that this testimony conflicted throughout, and that unless the court would allow Griggs to be present during the examination of plaintiff's witnesses, they would withdraw the motion to separate. Plaintiff's counsel then renewed such motion. Defendant's counsel then asked that Griggs be allowed to remain during the examination of plaintiff's witnesses for the reasons already stated, and for the further reason that the officers of defendant knew little or nothing personally about the greater portion of the matter in reference to which the plaintiff and her witnesses would testify. The court excluded all the witnesses in the case except the plaintiff and the cashier of defendant.

2d. Because the court erred in the portion of its charge which was as follows: "The defendant takes on itself the burden of proof that these checks are genuine. The bank, in receiving this deposit, guaranteed that it would keep the same, and only pay it out to the plaintiff, or to some one duly and legally authorized by her to receive it. The fact that the

signature of the name of plaintiff purports to be her signature, or that it is a good or bad imitation of her signature, will not do; the bank must show to your satisfaction that the signatures are genuine. If the defendant has established the genuineness of these checks by unimpeached testimony, then you will find for the defendant, but if defendant has failed to do so, then you will find for plaintiff on this issue."

3d. Because the court erred in the following portion of its charge: "If these checks are not the genuine checks of the plaintiff, then I charge you that the defendant is not helped by the power of attorney of plaintiff to Griggs. When that $4,000 00 was placed to the credit of the plaintiff with the defendant, it was placed beyond his control under that power. That power gave him no authority whatever to draw it out."

4th. Because the court erred in the following portion of its charge: "A witness may be impeached by evidence as to his general bad character, and a witness may impeach himself by confession to infamous conduct which, if true, would exclude him from respectable society."

5th. Because the court erred in the following portion of its charge: "The second defense set up by defendant is, that the plaintiff, after knowing all the facts as to the drawing of this money from the bank by Griggs, ratified such withdrawal. If the defendant has proved this to your satisfaction, then you will find the issue for the defendant. But the burden of proof to establish this is on the defendant, and it must show, first, that plaintiff knew the facts as to the deposit of this money in bank and its withdrawal by Griggs on checks purporting to be signed by her; and second, her ratification of such withdrawal after such knowledge. If you find these facts clearly proved, then you will find this issue for the defendant; but if the defendant has failed in establishing, by proof, all or either of these propositions, then you will find the issue for the plaintiff."

6th. Because the court erred in the portion of its charge which was as follows: "Another defense is that Griggs, after the deposit of this money in the bank and his withdrawals of

it on her checks, and with a full knowledge of these facts by the plaintiff, paid over the full amount so deposited and withdrawn, to her; this is denied by the plaintiff, and the burden of proof is on the defendant to establish it by evidence. If you find these facts proved to your satisfaction, to-wit: that the plaintiff, with a full knowledge of this deposit in bank, and of its withdrawal by Griggs on checks in her name, and that Griggs paid her over this money in satisfaction or part satisfaction of the same, then such payment, to the amount thereof, should be allowed the defendant as a credit on the plaintiff's claim, at the date of such payment; but if the defendant has not established these facts by proof, or if these payments by Griggs were made out of that part of the funds not put in bank, then you will find this issue for the plaintiff."

7th. Because the court erred in charging the jury as follows: "The receipt in evidence, dated August 27th, 1872, does not purport to be in regard to this deposit in bank or its withdrawal from bank, and Griggs, on disbursing the money left out of bank, and on depositing the balance of $4,000 00 in bank to plaintiff's credit, was entitled to just such a receipt, and her receipt would be, and is, a ratification of his disbursement of the nine hundred and odd dollars, and also a ratification of his deposit of the $4,000 00 to her credit in bank, and nothing more. It is not evidence that one dollar of the money deposited in bank and drawn out by Griggs, had ever been received by her."

8th. Because the court erred in the following portion of its charge: "If the receipt of September 16th, 1872, you shall find is as to a balance of $60 00 kept out of this deposit in bank, and the only transaction then had was the payment of the $60 00, then such receipt, although it expresses to be in full of all demands, can be of no avail to defendant in this case."

9th. Because the court erred in charging as to the note for $1,200 00 as follows: "Bank checks and promissory notes are not payment until themselves paid. As to the credits on this note, whatever amount of money Griggs paid to the plain-

tiff out of the money deposited in bank and drawn out by him, and she received, knowing it was such money, then to that extent defendant is entitled to a credit therefor in this case; but if she received it from Griggs without knowing this, then it is a payment with which defendant has nothing to do, and a private matter between her and Griggs, and the burden of proof of payment is on the defendant."

10th. Because the court erred in charging the jury as follows: "Defendant claims that plaintiff admitted to the officers of the bank that she signed two of the checks. In order for the defendant to avail itself of this, it should have shown which two checks were so signed by her, and failing to do this, it is not entitled to a credit therefor."

11th. Because the court erred in refusing to charge as follows: "If the execution of the power of attorney from Effie Kent to Dr. Griggs has been proven, such power of attorney constituted Dr. Griggs the agent of Mrs. Kent in the management of this money. And if Dr. Griggs exhibited the power of attorney to the bank at the time he made the deposit, as evidence of the capacity in which, and authority under which he acted in making the deposit, then the bank was authorized to deal with him, in reference to said money, as the trusted, confidential agent of Mrs. Kent, and if, while so dealing with him, he drew out the money upon checks purporting to have been signed by Mrs. Kent, and the evidence should be conflicting, and the jury in doubt whether such checks were genuine or forged, the jury should give the benefit of such doubt in favor of the bank and against Mrs. Kent."

12th. Because the court erred in refusing to charge as follows: "If the power of attorney from Mrs. Kent to Dr. Griggs is sufficiently proven, it constituted the latter the agent of Mrs. Kent in the management of the money received from the insurance company, not only for its collection and safe keeping, but also for its disbursement as to portions of it; and if, after the collection of this money, Dr. Griggs deposited a portion of it, say $4,000 00, in the City Bank in the name of Effie Kent, and at the time of doing so exhibited to the bank

the power of attorney as evidence of the capacity in which, and the authority under which he acted in making said deposit, then the money so deposited was not, by such deposit, removed from the operation and authority of the power of attorney, but the same remained within the terms thereof, and such deposit thereunder was subject to the control of the attorney in fact, Dr. Griggs, while it was not revoked; and if the bank, innocently and without knowledge of any fraud by Dr. Griggs, under these circumstances, and in the absence of contrary instructions, paid the money to him in good faith, and charged up the amount in the deposit book which he presented, believing that he was receiving it for the use and benefit of Effie Kent, and had reason so to believe, then the bank is not liable, even though they had no check from Effie Kent."

13th. Because the court erred in refusing to give the following charge: "The power of attorney from Mrs. Kent to Dr. Griggs constituted him her agent in the management of the money received from the insurance company, not only for its collection and safe keeping, but also for its disbursement as to portions of it; and if, after the collection of this money, Dr. Griggs deposited a portion of it, say $4,000 00, in the City Bank, in the name of Effie Kent, and at the time of doing so exhibited to the bank the power of attorney which is in evidence, as the authority under and capacity in which he acted in making said deposit, then the bank was authorized to deal with Dr. Griggs, in reference to this money, as the trusted, confidential agent of Mrs. Kent; and if, under these circumstances, the bank paid money to Dr. Griggs under the confidence created by said power of attorney, upon checks purporting to be signed by Mrs. Kent, and apparently signed by her, the bank is not liable, if the payment was made in good faith and charged up on the deposit book presented by Griggs at the time, believing the checks to be genuine, and that the money was being paid to the trusted, confidential agent of Mrs. Kent, for her use or on her order; and if it had good reason so to believe."

14th. Because the court erred in refusing to give the following charge: "If the jury should find that the checks were not signed by Mrs. Kent, still the bank will not be liable if they should find that she knew that the money was being drawn without her check, and consented to and approved of the same; nor will the bank be liable if the jury should find that Mrs. Kent, with the knowledge that the money had been drawn from the bank without her check, still accepted and used said money, knowing the same to be a portion of the said money in bank; nor will the bank be liable, under these circumstances, if she knew and consented to the use of the money by another party after having been so drawn."

15th. Because the court erred in refusing to give the following charge without qualification: "If the jury should find that the checks were not signed by Mrs. Kent, and that the money was drawn from the bank without her knowledge, still the bank will not be liable if she, after discovering that the money had been so drawn, ratified the act of so drawing said money; if the plaintiff, with the full knowledge that said money had been so drawn without her check, received the same from Dr. Griggs, or approved his disbursement of it, then such acts on her part constituted a ratification by her of the drawing of the money, and she cannot recover."

After charging this the court added the following qualification: "If knowledge proved and payment made; but the burden is on the defendant to show these facts, and the receipt of the 27th of August to Dr. Griggs does not prove either."

16th. Because the court erred in refusing to charge as follows: "The principal cannot ratify in part and repudiate in part, but a ratification of any part will operate as a ratification of the whole; and in this case, if Mrs. Kent has, with a knowledge that the same constituted a portion of the fund in bank drawn out by these checks, received any portion of it from Dr. Griggs, as her agent, it is a ratification as to his right, as her agent, to draw all of it."

17th. Because the court erred in refusing to charge as follows: "If in this case it should appear, by the evidence, that

Dr. Griggs had illegally drawn this money out of the bank by forged checks, and if it should further appear that Mrs. Kent, knowing this fact, recognized Dr. Griggs as her debtor for the whole or a part thereof, received by her as a settlement of the amount due her, and received his note for such amount, that would constitute a ratification, and plaintiff cannot recover."

18th. Because the court erred in refusing to charge as follows: "It is not necessary that Mrs. Kent should have actually received the note in her hands; but if she directed Dr. Griggs to place the note in the hands of Messrs. Lanier & Anderson for collection, or recognized such note as hers after having been so placed, she thereby recognized Dr. Griggs as her debtor; and if she knew the said note was for the whole or any part of the $4,000 00 which was in bank and drawn out by Dr. Griggs, and so recognized him as her debtor by receiving said note, and received the same in settlement of the amount due by him on the $4,000 00 so drawn out by him, that was a ratification by her, and she cannot recover. If she received, through Lanier & Anderson, $100 00 upon said note, she thereby recognized said note as her property, and also recognized Dr. Griggs as her debtor, and if she knew his debt was for a portion of the $4,000 00 drawn from the bank, and received said note in settlement of the amount due her on the $4,000 00, she ratified the drawing, and cannot recover."

19th. Because the court erred in refusing to charge as follows: "If the jury should find that Mrs. Kent received a payment upon a note given by Dr. Griggs, which she knew to be a portion of the $4,000 00 which was in bank, and which had been drawn out, and which she had received in settlement of the amount due her on the $4,000 00 deposit, it makes no difference whether or not she knew the exact amount of the note. It is sufficient if she knew it was a note given her by Dr. Griggs for either the whole or a part of the whole $4,000 00 which was in bank, and which Dr. Griggs had drawn out, she having consented to receive it in settle-

ment for the same; and if, with this knowledge, she received a payment on the note, she recognized the note and the debt to her by Dr. Griggs, and having so ratified the drawing of the money, she cannot recover."

20th. Because the court erred in refusing to give the following charge, without qualification: "The deposit of this money by Dr. Griggs in the bank did not operate as a revocation of said power of attorney as to that money."

To this the court added the following qualification: "But did deprive him of the right to draw the money out by virtue of it."

21st. Because the court erred in refusing to give the following charge, without qualification: "By the deposit of the money in bank, the power of attorney, which is in evidence, did not become *functus officio* as to that money."

To this the court added the following qualification: "It was of no force over that money so long as it remained in bank, until Mrs. Kent should draw it out. The bank, by a new contract with the plaintiff, had stipulated it should be drawn by her order."

22d. Because the court erred in refusing to give the following charge, without qualification: "An agent, under a power of attorney such as that in evidence, does not part with the right to control a fund when the same has been deposited by him in a bank in the name of his principal, until said deposit has been reported by him to his principal, unless said power of attorney is revoked, or unless the instructions to the agent are to deposit funds when collected."

To this the court added the following qualification: "On such deposit, he parted with the power to draw it out on the forged checks of his principal; and if he drew out on forged checks, then he waived the right to withdraw on his power."

23d. Because the court erred in refusing to give the following charge, without qualification: "If an agent, under a power of attorney such as that in evidence, deposit money collected by him, in a bank, in the name of his principal, in the absence of any instruction or agreement to deposit, said agent has the

The City Bank of Macon *vs.* Kent.

right to withdraw said deposit without the order of the principal, upon return of the evidence of deposit, if the same is done before it is reported to his principal, and before the revocation of the power of attorney."

To this the court added the following qualification: "But he cannot do this on the forged order of his principal. The presentation of such forged order would be a waiver of his right to do so under his power of attorney."

(The remaining grounds of the motion are so qualified by the presiding judge that it is deemed best only to set forth their substance as qualified.)

24th. Because the court erred in instructing the jury, in an emphatic manner, immediately after the defendant's counsel had stated its defense to the jury, as the court was about to adjourn for the day, that although the plaintiff had closed, yet they would probably be occupied several days in hearing the evidence, and it was therefore important that they should give their close attention to the testimony, so as not to be dependent upon the statements of counsel or their fellow-jurors for the evidence; that they had best make up no opinion in the case until they had heard all the testimony, the arguments of counsel and the charge of the court thereon, etc.; that they must keep in their minds the distinction between the facts as they were actually given in by the witnesses and the statements of counsel as to the facts they expected to prove; that they were only to consider the evidence as delivered before them.

Defendant's counsel submits that these instructions were calculated to prejudice their case, and were wholly uncalled for as they had plainly said to the jury that their statement simply covered facts which they expected to prove.

25th. Because the court erred in refusing to allow defendant's counsel to ask the plaintiff certain questions which were proposed, unless they would disclose their object, although such counsel stated in their place that they would, in due time, show the relevancy, and that they expected to contradict the witness by her own testimony, and begged the court

to remember that they were upon the cross-examination of the plaintiff, and that to disclose their object would be to defeat it.

26th. Because the court erred in reading aloud to the jury the date, as he understood it, of a certain letter from plaintiff to Lanier & Anderson, it being a disputed point as to how said date should be read.

(The court states that there was no obscurity about such date; that it was plainly written September 23d, 1872.)

27th. Because the court erred in conversing with H. L. Jewett, a witness upon the stand, after his examination was through, in an undertone.

As stated in the motion, the manner of the court in this conversation, was such as to prejudice the defendant's case before the jury; but as qualified by the court, it amounted to nothing more than is above set forth.

28th. Because the court erred in this: When Plant, plaintiff's witness, was testifying as an expert to the effect that, in his opinion, the checks were not signed by the same person who had made the signatures admitted to be genuine, defendant's counsel exhibited to him two signatures of plaintiff which had been proven to be genuine, but which the witness had not previously seen, and asked him, as an expert, if the two signatures were made by the same party who had made the other signatures, admitted to be genuine; the witness hesitated and declined to express an opinion. When pressed by counsel to give his opinion, he said : " In my opinion they may have been made by the same party or they might not have been." When pressed for a more definite answer, after hesitation he said : " I should be inclined to doubt if they were made by the same person." At this point the court interrupted the examination with this question : Mr. Bacon, are not these two signatures about which you are now questioning Mr. Plant, two signatures which have already been proven to be genuine? Counsel replied in the affirmative, when the witness expressed the opinion that upon close inspection he believed they were genuine.

The City Bank of Macon *vs.* Kent.

(The judge states that he never was aware of the fact, until it appeared in the motion for new trial, that Mr. Plant was not informed that the two signatures presented to him had been proved to be genuine; that he simply interfered to prevent a pointless cross-examination.)

29th. Because the court erred in this : Counsel for defendant had requested the court to charge the jury in writing. The court added verbal qualifications to certain written requests, when counsel asked if such additions were in writing. Upon the first occasion the court answered that it was not, and immediately reduced the same to writing. Upon the second, the court answered that the qualification was not in writing, and asked counsel if they wished to make a point on this fact, because if they did they could have the benefit of the exception ; if not the court would put it in writing. Receiving no response, the court reduced the same to writing.

(The pith of this ground lay in the manner of the court in its remarks to counsel. But the judge, in his comments, denies the objectionable features set forth.)

30th. Because the verdict was not the voluntary and uncoerced finding of the jury, but was determined by a device unauthorized by the law, which a majority of the jury, who were in favor of finding for the defendant, were forced to adopt to relieve themselves from great bodily suffering, and to escape imminent and great danger to their health, if not to their lives; all of which is shown by the affidavits of seven of the jurors in said case, hereto attached.

(The presiding judge states that if any of the jury were sick, or uncomfortable or desired better accommodations while kept together, he knew nothing of it; that they were brought into the court-room at eight o'clock in the morning and at three o'clock in the afternoon, at which times they appeared to be healthy and comfortable ; that he has examined the bailiff, who had the jury in charge, on oath, and he states that he never knew or heard of any complaint of sickness among them while under his charge. The judge further states that he has no knowledge of the mode by which the jury arrived

at their finding, except from the affidavits of the jurors which he declines to consider.)

31st. Because the court erred in refusing to allow the jury to be polled upon the ground that they had been allowed to disperse by consent, after the finding of the verdict and before the delivery of the same into court.

The motion was overruled and the defendant excepted upon each of the grounds therein set forth.

The defendant also presents the following exceptions:

1st. The case was tried at the April term, 1875. The defendant, at the same term, moved for a new trial, and, in open court, asked the judge to hear the motion read and to certify to the allegations therein contained as being true, while the occurrences were fresh in his mind. The judge refused, without assigning any reason therefor, to hear the motion read or to pass upon the truth of the facts set forth in the various grounds, but ordered that the motion be set down for a hearing at the succeeding term of the court. To all of which defendant excepted at the succeeding term of the court. No exceptions *pendente lite* were filed.

2d. At the next term of the court, when said motion was read, the judge stated that he would not certify to the correctness of many of the allegations therein contained. Counsel for defendant requested that before proceeding to argue the motion, the judge would point out the allegations which were erroneous. The judge refused to grant the request, or to give information as to where the errors would be found and in what they consisted, and ordered counsel to proceed with the argument. To all of which the defendant excepted.

3d. As appears from the comments of the judge in his order overruling the motion, he examined, *ex parte*, the bailiff having the jury in charge, as to the truth of some of the allegations in the motion contained, without giving notice to counsel for defendant, in order to enable them to contradict the statements of said bailiff. To this defendant also excepted.

Error is assigned upon each of the aforesaid grounds of exception.

The City Bank of Macon *vs.* Kent.

A. O. BACON; IRVIN & GRESHAM; WASHINGTON DESSAU, for plaintiff in error.

JOHN B. WEEMS; S. HALL; W. A. LOFTON; C. B. WOOTEN; HILL & HARRIS; R. F. LYON, for defendant.

BLECKLEY, Judge.

The power of attorney is very broad. It confers authority to pay out as well as to collect. The agency did not expire when the money was deposited in bank to the credit of the principal. Besides the evidence on the face of the power itself, there are other facts in the record going to show that the agency continued in force. We think the officers of the bank were well justified in treating checks as genuine, which were presented by the agent, bearing the name of his principal. Such checks were sufficient receipts and acquittances for the money paid out by the bank upon them. Besides, the element of ratification is in the case; and while it does not go directly to the checks, it does go to the general fact of use and control of the money by the agent. It is not improbable that the agent deceived his principal and *abused* his powers. But did he *transcend* the powers apparently conferred upon him? We think not. The bank did not select the agent. The principal selected him, and held him forth as her representative. If the agent's infidelity is to injure either, the bank, we think, should not be the victim.

The points ruled by the court are numerous, all of which appear in the syllabus.

Judgment reversed.