## WORSHAM v. LIGON et al.

1. Where on the trial of a caveat to the propounding of a will the parties stipulated in writing that a specific issue should be submitted as controlling the case, it was not error as against the caveators that, in addition to instructions on that issue, the court also charged the law appropriate to the probate of wills, which imposed an additional burden on the propounder.

2. There must be a concurrence of actual residence and of intention to remain, to acquire a domicile. Residence and domicile are not synonymous and convertible terms. In order to change his domicile a person must actually remove to another place with a present intention of remaining there as his place of domicile, or, having removed to the new place, avow his intention of remaining there as his place of domicile; but such avowal may be proved by express declaration or acts equivalent thereto. The instruction of the court on the subject of change of domicile was misleading.

3. The requests to charge were properly refused, because they contained expressions of opinion on the relative probative value of particular phases of evidence.

4. On an application to require the nominated executor to prove in solemn form a will which had been probated in common form in another State, where an exemplification of such probate proceedings had been filed and recorded in this State, the validity of the probate of the will in common form in the foreign State was not a pertinent issue.

5. In the absence of proof that resident owners of personalty were required to list their personalty for taxation with a particular official, the circumstance that an owner's property was not so listed for taxation is inadmissible, as warranting an inference that the owner of the property was not domiciled in the jurisdiction of the official whose duty it was to list the same for taxation.

FEBRUARY 19, 1916. REHEARING DENIED MARCH 2, 1916.

Appeal from probate of will. Before Judge Mathews. Bibb superior court. January 30, 1915.

*C. A. Cunningham* and *Green, Tilson & McKinney,* for plaintiff in error.

*Harris & Harris, M. Felton Hatcher,* and *R. K. Hines,* contra.

EVANS, P. J. H. A. Mettauer was born in Prince Edward county, Virginia, in 1827. In early manhood he located in Macon, Bibb county, Georgia, and there pursued the vocation of a practitioner of medicine for about fifty years. He never married. About nine or ten years before his death, which occurred on October 25, 1913, it was his custom to spend his summers in Virginia and his winters in Georgia. During this period of time he pur-

chased the old homestead of his father in Prince Edward county, Virginia, and about four years before his death, while in Virginia, he executed what purported to be his last will and testament, in which he described himself as being of the city of Macon in the State of Georgia. The will was attested by two witnesses. His death occurred in Virginia, and on application of the nominated executor the will was probated in common form in Prince Edward county, Virginia. It was afterwards probated in Georgia as a foreign will, on filing a transcript with the court of ordinary as provided by statute. Certain heirs at law filed a petition in the court of ordinary of Bibb county, Georgia, requiring the executor to offer the will for probate in solemn form, and urging as a caveat thereto that the will was void because it was not attested by three witnesses, as required by the law of Georgia, and that the decedent at the time of the making of the will, and at the time of his death, was domiciled in Georgia. By consent the case was appealed to the superior court, and on appeal counsel for propounder and caveators entered into the following stipulation: "We agree that the issue to be tried in this case is whether H. A. Mettauer at the time of his death was a resident of the State of Virginia or of the State of Georgia, or was domiciled in the State of Virginia or the State of Georgia; the propounder of the will contending that as a matter of law residence alone should determine the question, and the caveators contending that as a matter of law domicile and residence are synonymous and that domicile should determine the question." The jury returned a verdict in favor of the propounder, and the caveators moved for a new trial, which was refused.

1. In the motion for new trial the movants complain that the court did not narrow the issue to the limitations of the stipulation, but submitted the case generally, with instructions usual for the probate of wills, including the question of domicile. We do not think it necessary to specifically notice these assignments of error, because the caveator would not be hurt in the enlargement of the issue, imposing an additional burden of proof on the propounder, unless prejudicial error were shown in the instructions complained of, which was not done.

2. The controlling issue was the domicile of the decedent, and to that subject the evidence was largely confined. Both sides sub-

mitted evidence tending to sustain the respective contentions. In the submission of the issue the court gave certain instructions, excerpts from which are made grounds of the motion for new trial. Those alleged to be erroneous are: (1) "Where one has been a resident of one State, to become a resident of another State there must be a removal to that State with the purpose to remain, and to make it a home for a considerable length of time; or, being in that State, manifest the intention of remaining there for a considerable length of time for the purpose of making it a home." (2) "The residence referred to in the statute is not identical or synonymous with the word domicile, but refers, as I have stated, to his purpose to make the State in which the will is executed his home for a considerable time." (3) "If Dr. Mettauer went to his relatives' home in Virginia with the intention of making that his home, and this intention clearly appears in the case, and appears to have been entertained and acted upon for a considerable time prior to and up to the time of his death, Dr. Mettauer would, in the contemplation of the law of this case, be a resident of Virginia." (4) "But if, on the contrary, he merely paid a visit, without any intention, for any considerable time, of making their home his home, or making Virginia his home, but merely went there for the purpose of making a short visit, and he never intended anything else but to visit his relatives, and that that visit might be prolonged, he could not be considered to be a resident of Virginia on that account." (5) "It is not necessary that the purpose or intention be to make the place a permanent residence, that is, to remain there for the balance of one's life. And while it must appear there was more than a purpose to be a guest or pay a visit to a friend or relative, it is not necessary, in order to be a resident of the State of such friend, to have a purpose to remain there permanently; but it is necessary that there be a purpose to remain there a considerable time with such relative, and making his home with such relative for some considerable time." (6) "In this case you are to determine whether Dr. Mettauer left Macon with his intention to make his home with his relatives in Virginia, or whether he had, after leaving Macon, made it his purpose to make his home with such relatives, or whether he did make his home with such relatives for some considerable time after that time and up to the time of his death.

If he did purpose to make his home with his relatives in Virginia for some considerable time, and up to the time of his death, then you would be authorized to find that he was a resident of the State of Virginia, for the purposes of this case. But if Dr. Mettauer only paid a visit to his relatives, with no purpose to make Virginia his home for a considerable length of time, then you would not be authorized to consider him a resident of the State of Virginia, and it would be your duty to find against this will." The criticisms on these excerpts are largely directed to the use of the words "for a considerable time," as conveying the idea that a temporary sojourn in another State is sufficient to show a change of domicile.

There have been many attempts by courts and text-writers to give a precise definition of the term "domicile." Some confusion has arisen between confounding national with domestic domicile. Vattel's definition, "a habitation fixed in some place with the intention of remaining there alway" (Vattel's Law of Nations, § 63), was used in the former sense. Furthermore, the American courts are practically unanimous in holding that definition to be too strict, as resulting possibly in the deprivation of a large portion of citizens of their right of suffrage. "The domicile of a person," as defined by Story, "is that place or country in which his habitation is fixed, without any present intention of removing therefrom." Story's Conflict of Laws, § 43. That definition, in more or less varying form, has been followed by the courts of the country. Bouvier defines domicile as "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." 1 Bouvier's Law Dictionary, 915. The question of a change of domicile was before the convention of judges in *Lamar* v. *Mahony, Dud.* 93, and in the opinion it was said, "Every man is free to choose his place of residence; and if such choice be made, a day or an hour in that place will give the right of residence there." Our statutes declare that if a person has no family the place where he shall generally lodge shall be considered his domicile; and that "The domicile of a person 'sui juris' may be changed by an actual change of residence with the avowed intention of remaining. A declaration of an intention to change the domicile is ineffectual for that purpose until some act done

in execution of the intention." Civil Code (1910), §§ 2181, 2186. "Residence" and "domicile," as the latter word is employed under the law of succession, are not synonymous and convertible terms. A man may have two residences, but only one place of domicile. There must be a concurrence of actual residence and the intention to remain, to acquire a domicile. Hart v. Lindsey, 17 N. H. 235 (43 Am. D. 597); Hairston v. Hairston, 27 Miss. 704 (61 Am. D. 530). If a person actually removes to another place, with the intention of remaining there for an indefinite time as a place of fixed domicile, such place becomes his domicile. If a person leaves the place of his domicile temporarily, or for a particular purpose, and does not take up an actual residence elsewhere with the avowed intention of making a change in his domicile, he will not be considered as having changed his domicile. Crawford v. Wilson, 4 Barb. 505; Ross v. Ross, 103 Mass. 575. But if a person changes his domicile without any present intention of removing therefrom, it is none the less his domicile, although he may entertain a floating intention to return, or to move somewhere else at some future period. Ringgold v. Barley, 5 Md. 186; State v. Frest, 4 Harr. 559; Frost v. Brisbin, 19 Wend. 11 (32 Am. D. 423). As was said by the Supreme Court of Maine in Gilman v. Gilman, 52 Me. 162: "If a citizen of Maine, with his family, or having no family, should go to California to engage in business there, with the intention of returning at some future time, definite or indefinite, and should establish himself there, in trade or agriculture, it is difficult to see upon what principle his domicile could be said still to be here. His residence there, with the intention of remaining there a term of years, might so connect him with all the interests and institutions, social and public, of the community around him, as to render it not only proper but important for him to assume the responsibilities of citizenship, with all its privileges and burdens. Such residences are not strictly within the terms of any definition that has been given; and yet it can hardly be doubted that they would be held to establish the domicile." If there be both actual residence and an intention of remaining—the animus manendi, then a domicile is established. Wills executed by persons domiciled in Georgia are governed by the laws of this State, though they may be executed beyond the limits of the State. The right

to succession of property by inheritance or by will is controlled by the law of the domicile of the deceased owner. The code sections (Civil Code (1910), §§ 3872–3877) relative to the probate of wills of persons resident in other countries or States do not apply to persons whose domicile and citizenship is in Georgia, but who may temporarily reside outside the State. The use of the qualifying words, "for a considerable time," was liable to mislead the jury into the error that a change of domicile could be acquired by a temporary change of residence to another place, if the purpose be to remain there for a "considerable time." As this was the controlling issue, the error is vital and will require a new trial.

3. The court was requested in writing to charge: "In determining the question of the residence of H. A. Mettauer, deceased, if the acts and declarations of deceased are in conflict as to this question, I charge you that less weight should be given to his declarations than to his acts. That if his declarations should be found to be conflicting, they are to be considered as of little importance in determining the question of residence. I charge you further that written declarations are usually more reliable than oral ones, when the question of residence is under consideration." These requests were properly refused, as containing an expression of opinion upon the relative probative value of evidence, which the statute prohibits the judge from giving.

4. The will was probated in the State of Virginia in common form. It was probated in Bibb county, Georgia, by filing an exemplification of the Virginia probate with the ordinary as provided by the statute. Civil Code (1910), § 3874. The present proceeding was an application by heirs at law to require its probate in solemn form, for the purpose of caveat. In response to such application the executor offered the will for probate in solemn form. In this proceeding the validity of the probate in common form in Virginia is not a pertinent issue.

5. The court refused to allow the caveators to prove by the commissioner of revenue of Prince Edward county, Virginia, that he had not listed any personal property for taxation belonging to Dr. Mettauer during his incumbency in office. It was not made to appear that by the law of Virginia any duty rested upon resident owners of personalty to make a return of their property

for taxation. If no duty rested upon the owner of personal property to list the same with the proper official, the absence of a record of personalty for taxation will not be a circumstance authorizing an inference that the owner of the property was not domiciled in the jurisdiction of an official whose duty requires such an entry.

*Judgment reversed.   All the Justices concur.*