23528. BASS v. BASS.

Argued June 14, 1966—Decided July 7, 1966—
Rehearing denied July 21, 1966.

*Sumner & Boatright,* for appellant.

*Thomas M. Odom,* for appellee.

QUILLIAN, Justice. ■ Two enumerations of error present the contention that the evidence submitted upon the trial failed to establish the necessary jurisdictional facts and hence the decree and judgment entered in the case were void. The burden is upon the plaintiff in every divorce case to plead and prove jurisdiction of the suit. *Stewart v. Stewart,* 195 Ga. 460 (24 SE2d 672); *Harmon v. Harmon,* 209 Ga. 474 (1a) (74 SE2d 75). The Act of 1958 embodied in *Code Ann.* § 30-107 provides: "No court shall grant a divorce of any character to any person who has not been a bona fide resident of the State six months before the filing of the application for divorce. . ." Ga. L. 1958, p. 385.

Attached to the petition for divorce was an agreement of the parties to the case that the defendant and the plaintiff were both residents of Jeff Davis County, the situs of the suit. The plaintiff's undisputed testimony was that for a longer period than six months prior to June 25, 1964, the date when the suit was filed, she and the defendant had resided as husband and wife in Jeff Davis County. She further testified that on June 25, or 26, 1964, she left the county, departing for Jacksonville, Florida, obtained employment in that city and has resided there ever since. The proof having shown both the plaintiff and the defendant were residents of Jeff Davis County on June 24, 1964, we must apply the rule of the presumption of continuity as held in *Sears, Roebuck & Co. v. Wilson,* 215 Ga. 746, 753 (113 SE2d 611): "The doctrine that a state of things once existing is presumed to continue until a change or some adequate cause of change appears, or until a presumption of change arises out of

the nature of the subject, is an element of universal law. Without such a principle we could count upon the stability of nothing, and to assure ourselves of a set of conditions at one period of time would afford no ground for inferring the same conditions at any other period. This presumption of *continuance* is a well recognized principle of evidence. . ." There was no evidence that the appellant changed his domicile between the time of signing the agreement on June 24, 1964, and the filing of the suit on June 25, 1964. We conclude, the contrary not appearing, that both were residents of the same county when the suit was filed on June 25, 1964, nor did the mere fact that the plaintiff may have departed Jeff Davis County on the 25th of June, 1964, justify the conclusion that she changed her domicile on that date. It is held in *Worsham v. Ligon,* 144 Ga. 707 (2) (87 SE 1025): "There must be a concurrence of actual residence and of intention to remain, to acquire a domicile. Residence and domicile are not synonymous and convertible terms. In order to change his domicile a person must actually remove to another place with a present intention of remaining there as his place of domicile, or, having removed to the new place, avow his intention of remaining there as his place of domicile; but such avowal may be proved by express declaration or acts equivalent thereto." See *Code* § 79-406. The plaintiff did not disclose her intention (so far as the record shows) to remain in Florida. Indeed, her testimony indicates the contrary; she testified she went to Jacksonville and accepted temporary employment.

Other evidence of the court's jurisdiction was that the defendant made a general appearance and invoked the judgment of the Jeff Davis Superior Court on the issues of the case. In *Tate v. Tate,* 220 Ga. 393, 396 (139 SE2d 297), this court made the following pronouncement: "The husband, having filed an answer to the wife's suit in Upson County, and by such answer having made a general appearance, was subject to the jurisdiction of the court and could properly be bound by the judgment of the court favorable to the wife on all issues sustained by the evidence."

■ An enumeration of error complains the judge unduly restricted the cross examination of the plaintiff when she appeared

as a witness. The first instance in which it is insisted a thorough and sifting cross examination as provided by *Code* § 38-1705 was denied occurred when counsel for defendant had propounded questions and the witness had made answers as follows: "Q. You say that he accused you of every man in Hazlehurst. . . Name one of them? A. Well, after we were separated he accused me of Roscoe Floyd. Q. All right, who else? A. That's the only name after we separated; in fact before we separated it was just going out and different men, he never named any particular one. Q. Was there anybody besides Roscoe Floyd? A. He didn't call any other names. Q. I believe I understood you to say a moment ago that he accused you of a greater part of the men in Hazlehurst? A. This is true. Q. All right, who else besides Roscoe Floyd did he accuse you of? A. He didn't call any names. Q. Well, you think a minute and take all the time you want. A. I don't need no time. Q. Were there any other names besides Roecoe Floyd? A. Not particular, no. Q. Well, anyone particular then? A. He just accused me of men in general. Q. Well, what men?" At this point counsel for the plaintiff interposed the objection: "Your Honor please, she has answered that question, and it's sufficient probing there." The judge ruled: "I sustain that objection, don't ask that question again." The rule is that a trial judge may "restrain useless and unnecessary repetition of questions which have been asked and fully answered." *Clifton v. State,* 187 Ga. 502, 508 (2 SE2d 102), and cases cited. See *Etheridge v. Hobbs,* 77 Ga. 531 (3) (3 SE 251). The witness having answered the same question, the court's ruling was correct.

The second instance was when the plaintiff testified that she on an occasion borrowed money from a man. Counsel for the defendant asked her the question: "Have you ever borrowed money from J. T. Dean?" The objection was made that the evidence sought was not relevant. The court requested defendant's counsel to "state the purpose of this line of testimony." Counsel replied: "The things we would want to know, one thing would be testing of memory. . ." The judge sustained the objection "to that phase of it."

In support of this alleged error the appellant cites *Becker v.*

*Donaldson,* 133 Ga. 864 (4) (67 SE 92): "The right of cross examination, thorough and sifting, which belongs to every party as to the witnesses against him, should not be abridged, especially where the witness is the opposite party to the cause on trial, and is testifying for the purpose of making out his own case." The rule pronounced in the *Becker* case is, of course, sound, but is not authority for examination of a witness as to utterly irrelevant matters. If the rule were otherwise, trials would be interminable and records in chaotic confusion. See in this connection, *City Bank of Macon v. Kent,* 57 Ga. 283, 285 (16). "The right of a party to a thorough and sifting cross examination as to witnesses called against him is not infringed by confining such examination to matters that are relevant to the issues in the case." *Robinson v. Murray,* 198 Ga. 690, 691 (4) (32 SE2d 496). The judge may inquire as to the relevancy of questions propounded upon cross examination and may restrict the cross examination to relevant matters.

■ Other enumerations of error complain that named witnesses who refused to answer questions propounded to them on the ground that to answer the questions might tend to incriminate them and might tend to hold the witnesses and their respective families up to disgrace and public contempt were not required to answer the questions. The questions propounded undertook to elicit from each of the witnesses whether they had seen the plaintiff in the company of other men. The witnesses testified they were married men.

Familiar is the language of the Fifth Amendment to the United States Constitution (*Code* § 1-805) and Art. I, Sec. I, Par. 6 of the Constitution of this State (*Code Ann.* § 2-106), which read respectively: "No person . . . shall be compelled in any criminal case to be a witness against himself", and "No person shall be compelled to give testimony tending in any manner to criminate himself." The Georgia statute provides: "No party shall be required to testify as to any matter which may criminate or tend to criminate himself, or which shall tend to work a forfeiture of his estate, or which shall tend to bring infamy or disgrace or public contempt upon himself or any member of his family." *Code* § 38-1205. See

*Code* § 38-1102. It has been held: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then *he* must be the sole judge what his answer would be. The court can not participate with him in this judgment, because they can not decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privileges which the law allows, and which he claims. It follows necessarily, then, from this state of things, that if the question be of such a description that the answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon oath, that his answer would criminate himself, the court can demand no other testimony of the fact." *Empire Life Ins. Co. v. Einstein,* 12 Ga. App. 380, 384 (77 SE 209). See *Bishop v. Bishop,* 157 Ga. 408 (121 SE 305). "A party, though introduced as a witness in his own behalf, may, upon cross examination as to matters not voluntarily testified about on his direct examination, decline to give testimony which would tend to incriminate him, or to bring infamy, disgrace or public contempt upon himself or his family, notwithstanding the fact that at a previous trial of the case he had waived his privilege of remaining silent as to these matters. A waiver of this kind is not binding upon a witness at a trial subsequent to that at which the waiver was made." *Georgia R. &c. Co. v. Lybrend,* 99 Ga. 421 (5) (27 SE 794).

For the trial judge to have permitted inquiry in open court, or even in the presence of counsel, concerning the circumstances of the occurrence in question in order to ascertain whether answers to the questions would tend either to incriminate the witnesses or hold them and their families up to infamy, disgrace or public contempt would have deprived them of the protection of the Constitutional guarantees and the benefit of the previously quoted statute.

We have carefully considered the authorities cited by the ap-

pellant and find they do not authorize a different conclusion than that we have stated. The pronouncements of *Kelly v. State*, 19 Ga. 425, and *Varnadoe v. State*, 75 Ga. 181 (3), that "it is not only the privilege, but the duty, of the court to propound such questions to reluctant witnesses as will strip them of the subterfuges to which they resort to evade telling the truth," are not authority for the position that the constitutional and statutory immunity of the witness can be denied. Those cases simply hold that such probe into the testimony of a reluctant witness is to be made through admissible questions.

■ An enumeration of error complains that the judge erred in recharging the jury "as to the first verdict" disclosed to be repugnant as follows: "Gentlemen, as the verdict now reads you have returned a verdict which is what we call repugnant, you cannot grant each party a divorce; if you grant the plaintiff a divorce, that would mean that the husband could re-marry. Now I am not telling you in favor of which party to find, but I am telling you that you cannot find a divorce in favor of each party, you must find for the plaintiff on the issue of divorce, or for the defendant on the issue of divorce. Of course if you found for the defendant on the issue of divorce, that would mean that you could not award the wife alimony." The jury had returned to the courtroom with a verdict reading: "We the jury grant total divorce for both parties. We grant $100 per month for child to be paid monthly, beginning Oct. 1, 1965, and until child becomes of age or self-sustaining. This to be paid to custodian of child. We grant $50 alimony to the plaintiff per month beginning Oct. 1, 1965." The brief of appellant complains the charge was not correct as an abstract statement of the law and that the court intimated an opinion as to the verdict the jury should return.

There is no question that where a verdict is repugnant and void the trial judge has the duty to resubmit the case to the jury in order that they may decide whether a legal verdict can be agreed upon. It is held in *Reagan v. Reagan*, 220 Ga. 587, 589 (140 SE2d 841): "The verdict in this case which the court received, published and caused to be recorded is a finding that the plaintiff was entitled to a divorce on his ground of wilful

desertion. It is also a finding that the defendant was entitled to a divorce and permanent alimony on her cross petition alleging cruel treatment and wilful desertion. No other construction can be placed upon it. It is therefore apparent that this verdict contains inconsistent and diametrically opposite findings and when taken together they present an absolutely illogical result of the pleadings and the evidence." The verdict in this case was repugnant and had no legal efficacy; hence the judge did not err in instructing the jury to that effect. The charge as given merely informed the jury as to legal verdicts that could be returned, but there was no intimation by the judge as to what verdict the jury should return. The charge was not subject to the criticism contained in the enumeration of error.

■ The third enumeration of error alleged: "the final order and judgment of divorce entered up by the court on the 1st day of October, 1965"; and the fourth enumeration of error is: "the verdict and judgment was contrary to the evidence, without evidence to support it and the evidence demanded the verdict and judgment against a divorce for the plaintiff." The appellant's brief insists the court erred in transferring to the juvenile court the issue of who should be awarded custody of the parties' minor child. No authority is cited to sustain the position that the superior court judge could not transfer the case to the juvenile court for determination of the issue of the child's custody.

The Act of 1951 (Ga. L. 1951, pp. 291, 298) as amended (Ga. L. 1957, pp. 617, 618), embodied in *Code Ann.* § 24-2409 (2), provides: "Courts of record in handling divorce or habeas corpus cases involving the custody of a child or children, may transfer the question of the determination of custody and support to the juvenile court for investigation and report back to the superior court or for investigation and determination." See *Slater v. Slater*, 215 Ga. 161 (109 SE2d 521), recognizing the validity of this statute. We can not hold the trial judge erred in exercising this authority.

The question of the sufficiency of the evidence to sustain the verdict and decree must be resolved by an examination of the record. The evidence was in sharp conflict with reference to every issue of the case, except jurisdiction, and would have war-

ranted a verdict and decree in favor of either party. Hence, the complaint that it did not support the verdict and judgment in the appellee's favor can not be sustained.

In this connection, we have considered the appellant's contention that the agreement entered into by the parties constituted a consent that a divorce be granted and amounted to a collusion which barred the action. We do not so interpret the document. It merely recited the fact that the suit was about to be filed, agreed upon division of property, the custody of their child, waived service of the suit, agreed for a trial of the case at the first term of the court and merely requested the court to approve the marriage settlement agreement. Thus, it appears that none of its provisions amounted to consent for divorce, or collusion.

■ We finally consider the second enumeration of error. It alleges: "The order and judgment of the court dated October 1, 1965, awarding custody of the child to the plaintiff reserving jurisdiction of the matter in the court." The evidence concerning this issue was all adduced upon the trial in the superior court. The judgment of the juvenile court recites: that counsel for the plaintiff and the defendant stated that there was no new evidence, and that a court order should be based upon the record and evidence in the superior court proceeding.

The evidence submitted created a grave doubt as to which of the parties, or whether either of the parties, was a suitable person to rear the child and as to what was for the best interest of the child. But the evidence was not so conclusive as to demand an award of custody different from that made by the juvenile court. Consequently, the award of custody to the appellee will not be disturbed by this court.

*Judgment affirmed. All the Justices concur.*