## WILLIAMS *vs.* FAMBRO.

1. In an action to recover damages for the killing of a slave, the defendant may give evidence of the slave's character for turbulence and insubordination, for the purpose of aiding the probability of his theory of defense that the slave was killed in an act of insubordination, and also for the purpose of mitigating the damages; but the evidence must come from witness who knew the slave to have had such a disposition, or from admissions of the plaintiff, and not from general reputation, nor from proof of previous particular acts of insubordination on the part of the slave.

2. Such an action to recover damages for the killing of a slave, need not be preceded by a prosecution for the felony.

Trespass *vi et armis*, in Pike Superior Court. Tried before Judge CABANNIS, at October Term, 1859.

This was an action brought by Allen G. Fambro against Richard W. Williams, for the recovery of damage for killing a negro man slave, named Jim, *alias* Jim Sheet, the property of plaintiff. The declaration alleged that the negro was worth $1,200 00, and that he came to his death by wounds inflicted upon him by defendant.

The defendant pleaded the general issue.

Upon the trial it appeared from the testimony, that at the time the negro was killed, 23d March, 1857, the defendant was overseeing for plaintiff; that the plantation upon which the negro was killed, was in the county of Crawford, and that plaintiff resided about thirty miles distant. None of the witnesses examined was present at the killing; the negro was found dead—stabbed in the left side; the wound having the appearance of having been inflicted with a long knife. The defendant lived on the plantation with his family, and had charge of the negroes as plaintiff's overseer; that he was absent when the witnesses who were examined first went to the plantation and found or saw the negro dead; that he left immediately after the killing.

When the case was called for trial and plaintiff announced ready, defendant moved for a continuance, on the ground of the absence of a witness who resided in the county, and had been duly subpœnaed, and by whom defendant expected to prove that the negro killed was of bad character, turbulent and unruly; plaintiff objected to the showing as insufficient;

the testimony of the absent witness, as stated by defendant, if procured, being immaterial and inadmissible. The Court held the showing insufficient, and refused the motion to continue, and defendant excepted.

The plaintiff having closed his testimony, the defendant offered to read the depositions of one Robert D. Walker, a witness examined by commission. The substance of the answers of this witness was, that he knew the boy, Jim; that his character in the neighborhood was, that he was hard to manage and control, and of a violent disposition. That in January, 1856, he commenced to oversee for plaintiff, who told witness that if Jim complained of being sick, to give him some medicine, and if he was not sick, to put him to work; witness went to the door of the house where Jim was, and told him if he was well enough, to take his tools and go to work. Jim replied, that when he was sick his master never allowed him to work, and he'd be damned if he would do it; witness struck him with his fist, and went to get his whip, when Jim followed him out into the yard and picked up an axe and went back into his house. Plaintiff then told witness not to go into the house until he, plaintiff, went in and brought the boy out; plaintiff said the negro was dangerous, and advised witness to go armed, so as to defend himself. About three weeks after this, witness undertook to whip him for playing cards; he swore he'd be damned if he should do it, and picked up a stick and struck at witness; witness then had him tied and whipped him; witness remained on plaintiff's plantation four months, and whipped Jim three times; he attempted to strike witness one time, and resisted twice; says he was afraid of him, and good cause to be in the night, but not in the day. Nat Lucas and Frank Bacon told witness that the character of the negro was bad, and they wanted him to keep Jim away from their plantations; they said he was a dangerous negro, and of bad habits; witness considered him dangerous.

Plaintiff's counsel objected to the reading of these depositions, upon the ground that the testimony was irrelevant and immaterial. Defendant's counsel stated that this testimony was offered for two purposes: 1st. To show the character and conduct of the negro. 2d. To mitigate the damages. The Court sustained the objections and ruled out the depositions, so far as they went to prove the general character of

the negro for violence, unless some act of violence was shown to defendant, or knowledge on his part of the negro's character for violence.    To which ruling defendant excepted.

The testimony being closed, defendant's counsel requested the Court to charge the jury, that plaintiff could not maintain this action for damages, without first showing that he had prosecuted the defendant to conviction or acquittal on the criminal side of the Court.    The Court refused so to charge, but charged that plaintiff had the right to maintain this action, and to recover therein, without prosecuting the defendant criminally to conviction or acquittal.    To which charge and refusal to charge, counsel for defendant excepted.

The jury found for the plaintiff twelve hundred dollars. Whereupon defendant moved for a new trial, on the ground that the verdict was contrary to law and evidence, and because of error in the rulings, decisions, charges and refusal to charge above stated and excepted to.    The Court overruled the motion, and defendant excepted.

PEEPLES & SMITH, for plaintiff in error.

GIBSON & FLOYD, contra.

By the Court.—STEPHENS, J., delivering the opinion.

1. We think the plaintiff in error was entitled to the continuance to get the benefit of Barron's testimony, and that he ought also to have had the benefit of Walker's testimony, which was offered but ruled out.    We think the testimony of these two witnesses was material and admissible, so far as it related to their own general knowledge of the negro's disposition, or to Mr. Fambro's statements concerning his disposition, but not admissible so far as it related to previous particular acts of violence on the part of the negro, or to general reputation as to his disposition.    To go into proof of particular acts of the negro, would be to open a collateral issue involving "all things that he ever did."    Such proof coming collaterally, would come without the least notice to the opposite party, and therefore without opportunity to meet it by preparation.    Proof by general reputation is obnoxious to the objection that it is hearsay.    It is clearly within the general rule against hearsay, and we do not perceive that it is

within any of the exceptions.    When *reputation* is in issue, as it may be in several classes of cases, it may be shown by general report, or rather the general report in that case is the very thing to be proven, and of course may be proven.    But the thing to be proven in this case was, not the negro's reputation, but his character, his disposition or nature, and especially his aptness for strife and his proneness to insubordination—a fact which ought to be proven by witnesses who know it, or by the admissions of the opposite party.    The fact, if proven from the proper sources, ought to have gone to the jury for two purposes, as tending to aid the theory of the defense that the negro was killed in an act of insubordination, and as tending to lessen the value of the negro, and so to mitigate the damages.    To prove a proneness to insubordination, to be sure, does not prove an act of insubordination, but it does increase the probability of the story when there is, as there was in this case, other evidence suggestive of such an act.    Such a story of rebellion, if told by a witness, or indicated by circumstances, ought to be more easily believed concerning a violent, turbulent negro, than concerning a meek, humble one.    I think that any mind in search of truth in such a case, or finding itself in *doubt*, would want to know the character of the negro.    The presiding Judge intimated that he would have allowed this evidence, if it had been shown that this character had been communicated to Williams before he killed the negro.    His knowledge or ignorance has nothing to do with that bearing of the character which I have pointed out.    The sole purpose for which character was admissible in *this case* on the question of justification, was from the negro's general readiness for rebellion, to render more probable the evidence which tended to show an act of rebellion at the time when he was killed; and this probability is evidently not affected in the slightest degree by Williams' previous knowledge.    The light comes from the *fact* that the negro was one who was apt or likely to do such an act as the one imputed to him, and not from Williams' knowledge of the fact.

As to the bearing of the negro's character upon the question of damages, it is very obvious that a negro's bad character detracts from his value, and ought to lessen the damages for killing him.    In this view the evidence need but be confined to his particular character for insubordination, but

ought to be allowed as to his bad character in general, for a bad character in any respect is one element affecting his value.

2. We agree with the presiding Judge, that a previous prosecution for the felony to a conviction or acquittal, was not necessary to the maintenance of this action. In the case of *Neal vs. Farmer*, 9 *Ga. Rep.*, 555, this Court held that this doctrine applied only to such felonies as were felonies at common law, and that *at common law* no killing of a slave was felony, and therefore that an action to recover damages for the killing of a *slave* need not be preceded by a prosecution for the felony. We were invited by the argument in this case to review and reverse that decision. Without considering its original propriety, the decision ought to be maintained *now*. It was made nine years ago, and attracted the universal attention of the profession at the time. The legislature with full knowledge of the decision for nine years, not having changed the law declared by it, may fairly be considered as acquiesced in it. The great body of the common law derives its authority from decisions of Courts and legislative acquiescence in them. We adhere to this one.

Judgment reversed.