## RYDER *v.* THE STATE.

1. Where an application for the continuance of a criminal case,.
   on the ground of the absence of witnesses, complied strictly
   with all the requirements of section 962 of the Penal Code,
   and it appeared that the proof which the accused expected
   to make by the absent witnesses was not only material upon
   the controlling issue in the case but was also such as he
   could not as fully and satisfactorily make by any other wit-
   ness, or witnesses, it was error not to grant the continuance,
   or at least postpone the trial until the attendance of these
   witnesses could be had.
2. The rule above announced is specially applicable to a case
   in which the accused was indicted for murder and the main
   defense was that at the time of the homicide he was afflicted
   with insanity alleged to have been produced by a chronic
   disease originating at an early period of his life, the absent
   witnesses being persons who had exceptional opportunities
   for knowing the accused and his mental and physical condi-
   tion, two of them being his brothers with whom he had for
   years associated more intimately than with other relatives,
   another a witness who had been acquainted with him from
   his childhood, and the remaining one a physician who had
   known the accused all his life and was professionally familiar
   with the nature of his alleged disease, and the application for
   a continuance averring that all these witnesses would swear
   to his insanity and setting forth in detail the facts upon which
   their testimony to this effect would be based.

3. Such a showing was good and ought to have been so held, although it appeared by way of counter-showing that there were other witnesses, including near relatives, by whom many of the facts within the knowledge of the absent witnesses could have been proved, and although it appeared also that none of the latter had actually seen the accused for some time previously to the homicide. The main question being whether he was or was not insane when the killing was done, it was his right not only to put in evidence the facts he could prove by the absent witnesses but also to have their opinions, based on such facts, passed upon by the jury. This right certainly ought not to have been denied in the present case, there being much evidence for the State to show sanity, and the burden being upon the accused to prove insanity.

4. It is the right of the accused in a criminal case to introduce his witnesses in the order which he or his counsel may deem best, and the fact that a witness is compelled to leave the court for providential cause does not constrain the accused, for the purpose of getting the benefit of his testimony, to put him on the stand at an earlier period of the trial than was otherwise contemplated and intended.

5. In order to render the distinctive defense of insanity available as a basis for an acquittal, the burden is upon the accused to show affirmatively by a preponderance of the evidence introduced at the trial that he was insane at the time the act for which he is indicted was committed. Though this burden may not be successfully carried so as to authorize a verdict of not guilty on this particular ground, it is nevertheless the duty of the jury to consider the evidence touching the alleged insanity in connection with the other evidence in the case, and then in view of it all determine whether or not a reasonable doubt of the guilt of the accused exists in their minds.

6. In instructing the jury as to the nature of expert and non-expert testimony and explaining the rules under which witnesses belonging to each class might give their opinions as to the sanity or insanity of the accused, it was error to charge that the testimony of expert witnesses was entitled to great weight, and to add, "the same way with parties who associated with the defendant, lived with him, lived in the same community," etc. It is safer and better to leave all these matters to be weighed by the jury, and to let them determine the probative value of the testimony of each witness.

7. There was in the present case no violation of the well settled rule that non-expert witnesses may testify to their opinions concerning the sanity or insanity of a given person, it appear-

34

ing that in each instance where objection was made to testimony of this kind, the witness had stated sufficient reasons as the foundation of his opinion to render it proper for the same to be heard and passed upon by the jury.

8. When a juror who has qualified upon his voir dire is put upon the judge as a trior, the latter, in the absence of any extrinsic evidence impeaching or attacking the juror's competency, is not required to enter upon an investigation as to the same; and in no event is the court bound to ask or to permit counsel to ask the juror any question the answer to which would tend to incriminate or disgrace him. The scope of the inquiry in such matters is to be left largely in the discretion of the trial judge.

9. The court in some of its instructions referred to the homicide as "the act which the accused had committed" and thus at least intimated an opinion that the killing was done by him; and although many of the requests to charge practically conceded that this was true, yet as it was not distinctly admitted that the accused did commit the homicide, expressions embracing such language as that above quoted should not have been used.

10. The instructions as to the law of insanity were in the main correct and appropriate; and the charge as a whole, except as above indicated, was free from material error.

11. Whether this court has the power so to do or not, it is not now essential to deal with the court's action upon the motion for a change of venue, for the reason that the circumstances and surroundings when the accused is again put upon trial may be essentially different.

12. Except as pointed out in the preceding notes there was no substantial error at the trial, relating to any matter or question which can arise when the case is tried again, and therefore it is unnecessary to deal specifically with a large majority of the seventy-two grounds of the motion for a new trial.

Argued February 24-25,—Decided March 12, 1897.

Indictment for murder. Before Judge Butt. Talbot superior court. September term, 1896.

*J. H. Worrill, A. A. Carson, DuPont Guerry, J. J. Bull* and *C. J. Thornton,* for plaintiff in error.

*J. M. Terrell, attorney-general, S. P. Gilbert, solicitor-general,* and *J. H. Martin,* contra.

COBB, Justice.

W. L. Ryder was indicted for the offense of murder. His defense was that he did not commit the homicide charged in the indictment, and that if he did, he was insane at the time the killing was done.

1, 2, 3. When the case of the accused was called for trial, he made a motion for a continuance on account of the absence of four witnesses. His motion complied strictly with the law regulating such matters. Penal Code, §962. And the only matters about which there could be any question were whether the facts sought to be proven by the absent witnesses were material to the defense, and whether or not he could prove the same facts as well by other witnesses. It was claimed that the accused was subject to fits of insanity produced by a chronic disease of the ear which orignated at an early period of his life, and that when suffering from the effects of this disease, he was and had been at various times in his life insane and irresponsible. Two of the absent witnesses were his brothers, who, according to the showing made, had associated with him more intimately than his other relatives, and his physical and mental condition was more peculiarly within their knowledge than that of any other members of his family. Another witness was one who had been acquainted with him from his childhood, and who knew of his infirmity and of his periods of alleged insanity and irresponsibility. The remaining witness was a physician who had known the accused all his life, and was professionally familiar with the nature of the alleged disease. It further appeared in the showing for a continuance that all these witnesses would swear to the insanity of the accused at times when his disease was at its worst. In the showing the facts upon which their testimony would be based appeared in detail. The counter-showing disclosed that there were other relatives, members of the immediate family of the accused, who were present at the trial, and could be called as witnesses, but it did not appear that any of these

would testify to the peculiar facts set out in the motion for a continuance and upon which it was based. It is proper, however, to add that the four absent witnesses did not see the accused on the day of the homicide, or at any time immediately preceding that day. In a case like the present, where there has been a shocking homicide, and where there can be scarcely a doubt that the accused committed it, although he does not expressly so admit in his plea, the defense mainly relied on being that of insanity at the time of the killing, it was depriving the accused of a very great right when he was forced to trial in the absence of these four witnesses who knew the facts that were material to his defense, and whose presence was important to the proper determination of the issue. It is especially so in the present case when the record shows that there was much evidence for the State to show that the accused was sane. The large amount of evidence for the State showing the sanity of the accused, instead of being a reason for overruling the motion for a new trial, is a stronger reason for granting one. The refusal of the court to continue his case deprived the accused of the benefit of the four witnesses, who, above all others, were needed by him in his trial to meet the mass of evidence showing sanity. The court should have either continued the case for the term, or postponed the trial until a later day in order that the accused might have secured the attendance of these witnesses, in order that the jury might pass upon the question of their credibility and the weight to be attached to their testimony.

4. The physician, who was the absent witness in the motion above referred to, subsequently appeared at the trial, but was compelled to leave the court for providential cause. Before leaving he requested counsel for the accused to allow him to go upon the stand and testify, so as not to be required to return to the court, to which request they declined to accede. We do not think that the accused lost any of his rights to complain of the subsequent absence of

this witness because his counsel failed to interrupt and change the line of his defense and the manner in which it was being conducted so as to place this witness upon the stand in advance of the time when they had contemplated so doing. It is an important right of the accused to be allowed to introduce his witnesses in the order in which he or his counsel think is to the best interest of his case, and witnesses should not be allowed to dictate to counsel as to when they should be put upon the stand. The failure of counsel to introduce the witness at a time which was inconsistent with the interest of the accused should not generally deprive him of his right to complain of the absence of a witness at a subsequent stage of the case, if that absence is in no way occasioned by the accused or his counsel.

5. Following the decision of this court in the case of *Carr* v. *The State*, 96 *Ga.* 285, and the cases there cited, the propositions stated in the 5th head-note are too well settled to need further discussion.

6. Where the defense of insanity is relied on, and there is evidence of expert and non-expert witnesses who testify as to the sanity of the accused and who were "parties who associated with the defendant, lived with him, lived in the same community," it was error for the judge to charge the jury that the testimony of expert witnesses was entitled to great weight, and to add, in substance, that the testimony of intimate associates of the accused should be given similar weight. All this testimony is allowed for the purpose of informing the jury as to the truth of the issue, and the weight to be given to it is for them. The judge should not intimate in any way to them how they should deal with any particular class of witnesses, but under proper instructions leave the entire matter to them. It may be that in certain cases the testimony of non-expert witnesses would, in the mind of an intelligent juror, outweigh the testimony of the alleged expert witnesses, and that in other cases the testimony of the expert would be given the greater weight; but

the jury are the sole judges of such things, and the judge·
should leave them untrammeled to pass upon the credibil-
ity of all witnesses, and give such weight to the testimony
of each as they see proper.

7. "Where the question under examination, and to be de-
cided by the jury, is one of opinion, any witness may swear·
to his opinion or belief, giving his reasons therefor." Penal
Code, §1021. There seems to have been no violation of this·
well settled rule in regard to the non-expert witnesses in this
case. Each witness examined was allowed to state his opin--
ion, and no one did so without giving his reasons therefor.
The opinion and the reasons go to the jury together, that the·
jury may determine what the opinion is worth. It may be·
that a particular reason given for an opinion is not really·
a good one, and such a reason would most probably in the·
mind of an intelligent juror destroy the opinion at once;
but, nevertheless, the opinion and the reason ought to be·
considered, that the jury may give the opinion such weight
as they think proper.

8. When a jury is about to be impaneled for the trial of a
felony case and the panel is "put upon the accused," and
the names of the individual jurors are being called, it is com--
petent for the State, or the accused, to make certain objec-
tions to each juror as he is called. Penal Code, §973. Upon
such objections being made to a juror, it is the "duty of the·
court to hear immediately such evidence as may be sub-
mitted (the juror being a competent witness), in relation to·
the truth of these objections." On this issue the juror may
be called as a witness, either by the party attacking his com-
petency, or the party seeking to establish it. If in this in-
vestigation the juror is held to be competent, the next step·
is to place him upon his voir dire and ask him the questions·
prescribed in Penal Code, §975. If he answers these ques--
tions so as to qualify himself as a juror, the judge is not re-
quired, when the juror is placed upon him as a trior, to ask
the juror any question in regard to his competency, nor to·

permit counsel to do so; certainly neither the court nor counsel should ask any question which would involve a breach of the juror's privilege to refuse to answer on the ground that so doing would tend to incriminate, or otherwise disgrace him; and neither the court itself should ask any question, nor should it permit counsel to ask any question of the juror until extrinsic evidence has been introduced tending to show that the juror has answered the questions or some of them falsely, thereby impeaching or attacking his competency.   On this investigation the juror is not a competent witness in the broad sense in which the term is used when the challenge is for cause on one of the grounds stated in Penal Code, §973.   If the challenge for cause is overruled, and if the juror answers the statutory questions so as to qualify himself, he stands before the court as a competent juror, and he cannot be called upon to disqualify himself; and if placed upon the court as a trior, and his disqualification is brought to the attention of the court by evidence other than that of the juror, then the court should determine the question as to whether he is a competent juror or not, and ask him such questions only as he under the law would be compelled to answer if called as an ordinary witness, and then determine his competency from the extrinsic evidence, as well as the statement of the juror.   No fixed rule can be laid down to be followed in all cases.   The inquiry which the judge should make after the juror's competency is attacked by extrinsic evidence is to be left largely to the discretion of the trial judge according to the circumstances of each case.

9. While the accused mainly relied upon the defense of insanity, still, as he did not expressly admit that he committed the homicide, the court should not in its instructions to the jury have referred to the homicide as "the act which the accused committed." But as counsel for the accused, in numerous requests which were made to the judge to charge, used similar language, this error on the part of the judge

would not have necessitated a new trial, even though the re-
quests containing the language were not actually given by
the judge. Counsel for the accused should not, in their com-
munications with the court in requests to charge, use lan-
guage which would be calculated to mislead the court as to
the contentions of the accused, and then afterwards com-
plain that the language used, upon being subsequently
adopted by the court, was calculated to prejudice the case of
the accused. Of course, if the requests containing the lan-
guage had been given, there would be no question; but it
seems to us that where the requests gave to the judge lan-
guage which he used in his charge, independently of the re-
quests, the language ought not to be the subject of com-
plaint at the instance of the accused. However, in cases
where the accused does not expressly admit that he com-
mitted the act, it is not good practice for the judge to use
such expressions as those above quoted.

10. The charge of the court was, in the main, correct
and appropriate; and considering it as a whole, except as
herein criticised, was free from material error. The instruc-
tions as to the law of insanity were in accord with the de-
cisions of this court cited above.

11. It is not necessary to decide in this case whether this
court has the power to review the decision of the judge of
the superior court upon a motion to change the venue in a
criminal case under the act of 1895. (Acts 1895, pp. 70-
71.) Even if this court has the power to review such a
decision, there is no present occasion for exercising it, as the
circumstances and surroundings of the case when the accused
is again put upon trial may, and probably will be, essentially
different from what they were at the time the change of
venue was requested.

12. We have dealt with all of the substantial errors com-
mitted at the trial relating to any matter or question that is
the least likely to arise when the case is tried again; and

hence we do not deal more specifically with the numerous grounds of the motion for a new trial.

*Judgment reversed. All the Justices concurring.*