[No. 14612.   Department One.   April 23, 1918.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK MUSSELMAN, *Appellant.*[1]

CRIMINAL LAW—CONTINUANCE—ABSENCE OF WITNESSES—ABUSE OF DISCRETION.   It is error to force one accused of murder to trial within twenty-five days after filing the information, and to deny a continuance in order to secure absent nonresident witnesses, where the killing was admitted and the only defense was insanity, and it appears that the accused had only recently arrived in this state, and witnesses from North Dakota made affidavit as to material, competent and important facts bearing on the issue of insanity which they would testify to, if the case were postponed until after harvest, and reasonable probability of their attendance in such case was assured.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered August 21, 1917, upon a trial and conviction of murder in the first degree.   Reversed.

*Wm. O'Connor,* for appellant.

*Chas. A. Johnson* and *A. J. O'Connor,* for respondent.

WEBSTER, J.—The defendant was convicted of the crime of murder in the first degree, and appeals.   The only assignment of error it will be necessary to notice is that the court abused its discretion in denying appellant's application for a continuance upon the ground of absent witnesses.   The facts pertinent to this inquiry, briefly stated, are these:   On July 12, 1917, the prosecuting attorney of Okanogan county filed in the superior court an information charging that, on July 6, 1917, the defendant committed the crime of murder in the first degree by shooting and killing Opal Harmeson.   On the same day, the appel-

[1]Reported in 172 Pac. 346.

lant was arraigned and entered a plea of not guilty. Being without funds, the appellant was unable to employ counsel, and the court appointed William O'Connor, Esq., to represent the accused upon the trial of the charge contained in the information. At that time the cause was set for trial on August 8, 1917. In the meantime, Mr. O'Connor, with commendable diligence and industry, made a careful examination of the case, and on August 6, 1917, asked and obtained leave of court to interpose the statutory plea of mental irresponsibility, which was filed on the following day. On August 6, 1917, he applied to the court for an order continuing the trial of the cause to November, 1917, for the purpose of enabling the defendant to procure material and necessary evidence to establish the plea of mental irresponsibility, and in support thereof, filed the following affidavit:

"William O'Connor, being first duly sworn, on oath deposes and says that he is the attorney for the defendant in the above entitled action, that the defendant cannot safely proceed to trial on the date set, to wit, August 8, 1917, on account of the absence of material testimony. Affiant states that he was appointed to defend Frank Musselman at the time the said defendant was arraigned, and that said defendant is now, and was at that time, without funds. That the defendant was a resident of Douglas, North Dakota, and was in the state of Washington for a week or ten days prior to the time the crime charged was committed. That said defendant was arraigned upon the 12th day of July, and at that time the trial was set for the 8th day of August, 1917. That, at that time, this affiant requested that the trial be set for a later date in order to give this affiant more time to look up the case and get testimony, and investigate the case. That this affiant commenced at once to write to relatives and friends of the defendant in an effort to ascertain the facts surrounding the defendant and the deceased and to all possible sources from which information might

be obtained from the data this affiant possessed. That this affiant is satisfied from the data obtained and from observations that the defendant is insane, and has entered a plea of insanity in his behalf. That this affiant has just secured some of this information on the 4th day of August, 1917, by reason of the fact that it must be obtained by correspondence by this affiant. This affiant is assured that if said cause is continued until after harvest is over that Ettie M. Heath of Douglas, North Dakota, will appear and testify in behalf of the defendant to the following facts: That she has known defendant all his life; that, prior to a year ago, the defendant was energetic, cheerful and liked companionship as well as the average man, and was well liked; that, during the past year, the defendant seemed to be wholly preoccupied with himself; that he could not apply himself mentally or physically as he used to; that he became gloomy and self-absorbed and seemed to be studying upon something; that he avoided companionship and kept to himself and seemed to be absent minded and unable to fix his mind and attention upon anything for any length of time. Also that she has been informed that the grandmother of the defendant went insane. That this witness cannot come on account of harvest, but has assured this affiant that she will come voluntarily at a later date.

"Affiant is assured that if said cause be continued until after harvest is over that O. M. Heath, of Douglas, North Dakota, will appear and testify in behalf of the defendant to the following facts: That the defendant, Frank Musselman, worked for him and lived with his family for years; that last year when Frank Musselman, the defendant, worked for a neighbor, he saw him very often up until about the 27th day of June, 1917; that the defendant used to be cheerful, energetic and attentive to his work; that since his return to Douglas, North Dakota, from Kalispel, Montana, something over a year ago, that the defendant became morose, absent minded, seemed to have lost his energy and did not take interest in his work like he formerly did; that he seemed to desire to be alone and seemed to be in a study all of the time and avoided the com-

panionship of his friends. Affiant is assured that this witness will appear voluntarily.

"Affiant is assured that if said cause is continued until after harvest, which will be about November, 1917, about three months, that G. J. Afdahl, of Douglas, North Dakota, will appear voluntarily and testify on behalf of the defendant to the following facts: That he has been acquainted with the defendant for a number of years; that the defendant worked for him last year upon his farm; that he saw the defendant frequently last year and the spring of this year up to the time the defendant left Douglas, North Dakota, about June 21st, 1917; that he noticed a great change in the defendant in the last year or more; that the defendant used to be cheerful, energetic and attentive to his duties; that during the past year the defendant was morose, absent minded, seemed to have lost his energy and was not attentive to his work as formerly; that he seemed to desire to be alone, and seemed to be in a study most of the time, and acted very peculiar.

"Affiant believes that, if said cause is continued until next fall, that he can secure the presence of the defendant's mother, Mrs. J. B. Musselman, who resides at Burnt River Pumping Station, Alberta, Canada, who will, he is informed, testify that the defendant's grandmother went insane and died insane, and that as a child, defendant had convulsions; that the last heard from his mother, she was quite sick with shock.

"Affiant has tried to secure the presence of these witnesses for the 8th of August, but has been unable to do so, but is assured that they will appear later. That he cannot secure this evidence from any other source, or within the state of Washington at any time from any source, within the state at this time and within call of the process of the court. That all of this evidence is very material on the question of the insanity of the accused at the time of the commission of the crime charged, and it would be unsafe for defendant to go to trial without it; that this affiant has been unable to secure this evidence elsewhere and has no other evidence to cover the facts set forth and covered by their testimony. All of these witnesses have never

been within the state so they could be reached by summons of the defendant, and that the facts are part of the chain necessary to establish defendant's plea.''

In addition thereto, counsel for defendant filed separate affidavits of all the persons named as witnesses whose evidence he desired to obtain in support of the plea of insanity, with the exception of appellant's mother. These affidavits verify the statements made in counsel's affidavit as to the testimony they would give and their willingness to appear as witnesses upon the trial ''if subpoenaed by the state of Washington,'' in the event the cause should be continued until after the harvest season in North Dakota.

The application was denied and the cause proceeded to trial on August 8, 1917, as originally fixed by the court. Upon the trial the killing was admitted, the sole defense relied upon being that, at the time of the shooting, the defendant was insane and legally irresponsible for his acts. The only witnesses in defendant's behalf were himself and Dr. C. W. Lane, who, testifying as an expert without compensation, expressed the positive opinion that appellant was insane, the form of his insanity being paranoia. While Dr. Lewis, called in behalf of the state, testified that, in his opinion, appellant was sane, he also said that his opinion might be materially modified if he knew more of appellant's history.

It will require no argument to demonstrate that the evidence which it is said the absent witnesses would give was material, competent and highly important to the accused, and that reasonable diligence, under the peculiar circumstances which confronted appellant's counsel, was employed for the purpose of procuring the attendance of the witnesses. If the action of the court is to be sustained, it must be so upon the ground that the witnesses were not subject to the compulsory

process of this state and there was no reasonable probability that they would be present if the trial of the cause was postponed. The request of the defendant was not an unreasonable one. It might very well be that witnesses from agricultural districts would be willing to volunteer their presence at a time when they could do so without great sacrifice, when they would not be willing to appear if it entailed the loss of their crops, a condition which the courts ought to understand and appreciate.

The spirit of our institutions is such that every person accused of crime shall have a fair and reasonable opportunity of preparing his defense and producing in court the witnesses upon whose testimony he relies for an acquittal. This rule is not prompted by any undue consideration of the rights of the defendant alone, it being a matter of vital importance to society itself that trials be fairly conducted and that full means of preparation be granted the prisoner, to the end that punishment shall be visited only upon the guilty.

With reference to the question of whether a continuance should be granted upon the ground of absent witnesses who are without the territorial jurisdiction of the court, the modern rule seems to be that the mere fact of such nonresidence is not of itself a sufficient reason for denying a postponement of the trial, provided it is made to appear that there is reasonable probability of such witnesses being produced in the event a continuance is granted. Mr. Freeman, in his copious note to the case of *Blackburn v. State* [48 Tex. Cr. 286, 87 S. W. 692], 122 Am. St. 743, treating of this subject, at p. 752, says:

"When a witness is beyond the jurisdiction of the court, it is not error to refuse a continuance on the ground of his absence, when it does not appear that there is any ground to expect his attendance in future.

Upon this general proposition there is no conflict of opinion, but whether a continuance should be denied merely because an absent witness resides out of the state, and is, therefore, not amenable to process, is a question which seems to have given the trial courts a good deal of trouble, some judges being of the opinion that they had no discretion under such circumstances, but that the continuance must be denied. This, however, is a mistake, for, as we shall see, the granting of a continuance is as much within the discretion of the trial court when the absent witness is a nonresident or temporarily out of the state, as if he was in the state. In both instances, the only question to be considered is the probability of securing his testimony at a future trial if the case is continued.''

In 6 Ruling Case Law, at page 559, it is said:

''The general rule is that a continuance will not be granted unless it is shown that the testimony of the witness whose presence is desired can in all probability be secured at a future trial. Under this rule a continuance has been properly denied where the witness was beyond the jurisdiction of the court and not subject to its process. The mere fact that a witness is in another state and therefore not amenable to the process of the court should not, however, be conclusive of this question. The granting of a continuance is as much in the discretion of the court where the absent witness is a nonresident or temporarily out of the state as where he is in the state. The inquiry in either case is the same. Are there reasonable grounds to believe that the presence of the witness will be had if the case is continued? But naturally if a witness is beyond the jurisdiction of the court and it does not appear that there is any ground to expect his attendance in the future, a continuance on the ground of his absence will be denied.''

In *White v. Commonwealth,* 80 Ky. 482, Judge Hines, delivering the opinion of the court, said:

''Whether the witness is a resident of the state or nonresident and absent from the state, the inquiry in

either case is the same: Is the evidence material, has diligence been used to secure his attendance, and are there reasonable grounds to believe that the presence of the witness will be had by a continuance? The question is not whether the court can enforce the attendance, because if that were true a continuance could not be had on account of the absence of a citizen of this state, who was at the time within the jurisdiction of another sovereignty. In neither case could coercive process be applied. The right to a continuance in either case would depend upon the probabilities of the witness coming within or submitting himself to the jurisdiction of the court."

In *Brown v. State,* 65 Ga. 332, Chief Justice Jackson, speaking to this question, observed:

"Whilst therefore the general rule is that cases will not be continued for absence of witnesses outside the reach of the compulsory process of the court, yet where there has been no lack of diligence, where the witness has promised to attend, where the testimony is of great materiality, where the application is not made for delay, but there is a reasonable expectation that the testimony will be on hand within a reasonable time, the case should be either continued for the term or postponed to a day certain, so as to give the defendant an opportunity of procuring the witness."

Does the record here disclose that there is reasonable probability that the absent witnesses, or some of them, will appear and testify if they are afforded a reasonable opportunity of doing so? The very fact that the absent witnesses were sufficiently interested to make the affidavits is some indication of their willingness to testify. If it were not for the clause "if subpoenaed by the state of Washington" inserted in the several affidavits we would have no hesitancy in saying that there was a reasonable probability that the witnesses would appear and testify. If a literal construction is placed upon that language it is perfectly

plain that the absent witnesses have conditioned their coming to the state upon terms which it is impossible to meet. Palpably the state of Washington cannot effectively subpoena witnesses in the state of North Dakota. We do not deem it fair, however, to separate these words from the body of the affidavits and attach all-controlling significance to them and ignore the remainder of the affidavits. It seems plain that the witnesses intend to come under some reasonable conditions. We think the words were inserted for the purpose of indicating that the witnesses desired to be assured of receiving their legal fees and allowances; and if they volunteer to come to the state they will be entitled to mileage from the point where they cross our border, together with witness fees during their attendance upon the court. If, however, it be assumed that these witnesses would not come to this state unless their entire expenses were paid, the appellant has had no reasonable opportunity of communicating with his relatives and friends looking to the securing of funds for that purpose.

Let it be remembered that the appellant is a stranger within our gates. No one subject to the compulsory process of the courts of Washington, save the relatives of the deceased girl, know anything concerning the life and history of the accused. All of these facts, however, are peculiarly within the knowledge of appellant's mother, and surely no court would be justified in assuming that she would fail her son in this the hour of his extremity.

We cannot overlook the fact that the accused was forced to trial with unusual haste, only twenty-five days elapsing between the date counsel was appointed to defend him and the beginning of the trial. The state of Washington, in the enforcement of its criminal laws, does not demand any victims, and before this court

should put the seal of its approval upon a conviction of one accused of a heinous crime, as the result of a trial wherein he was denied all opportunity of presenting evidence upon the single and vital issue in the case, it should pause and seriously consider. It seems to be more in keeping with the orderly and wholesome administration of justice to afford the accused a fair chance of presenting his case and procuring his witnesses, than to indulge in fine spun theories or speculations as to whether such course will avail him anything.

While the matter of granting continuances because of the absence of witnesses is largely within the sound discretion of the trial court, and, as a general proposition, its ruling will not be disturbed except in cases where manifest injustice has resulted, yet it is the duty of appellate courts to reverse such rulings in cases where a fair trial has been denied. As said by Cobb, J., in *Ryder v. State,* 100 Ga. 528, 28 S. E. 246, 62 Am. St. 334, 38 L. R. A. 721:

"W. L. Ryder was indicted for the offense of murder. His defense was that he did not commit the homicide charged in the indictment, and that if he did, he was insane at the time the killing was done. . . . In a case like the present, where there has been a shocking homicide, and where there can be scarcely a doubt that the accused committed it, although he does not expressly so admit in his plea, the defense mainly relied on being that of insanity at the time of the killing, it was depriving the accused of a very great right when he was forced to trial in the absence of these four witnesses, who knew the facts that were material to his defense, and whose presence was important to the proper determination of the issue."

While we are loath to disturb the verdict, we are forced to the conclusion that the learned trial court abused its discretion in denying appellant's application

for a continuance, and because of this error, the judgment will be reversed, and the cause remanded for a new trial at such reasonable time in the future as will afford appellant a fair opportunity of having his witnesses present.

ELLIS, C. J., PARKER, and MAIN, JJ., concur.