45878. INTERSTATE LIFE & ACCIDENT INSURANCE
COMPANY v. WILMONT.

EVANS, Judge. 1. While the petitioner under a special accident insurance policy has the burden of showing the insured sustained bodily injuries solely through violent, external, accidental means, which resulted directly and independently of all other causes in the death of the insured within the terms of the policy, yet the petitioner does not assume the burden of submitting evidence to negate an exclusion in the policy. *Hartford Acc. Ins. Co. v. Hulsey,* 109 Ga. App. 169 (2) (135 SE2d 494). Where the insurer seeks to invoke an exclusion contained in its policy, it has the burden of proving the facts come within the exclusion. *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (5) (77 SE 1072); *Darby v. Interstate Life &c. Ins. Co.,* 107 Ga. App. 409 (1) (130 SE2d 360).

2. Where the only factor known is that the insured died as a result of violent and external injuries such as gunshot wounds, the cause is presumed accidental until the contrary is shown. *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (6), supra; *New York Life Ins. Co. v. King,* 28 Ga. App. 607 (112 SE 383); *Continental Assurance Co. v. Rothell,* 121 Ga. App. 868 (3) (176 SE2d 259).

3. A certified copy of a death certificate properly filed is no longer prima facie evidence of the facts stated therein, and where the facts contained therein are shown to result from statements made by others, they amount to hearsay. Under the present

law a certified copy of a duly filed death certificate is allowed in evidence only for the purpose for which it was intended, that is, to show that the person named therein is no longer in life. New Health Code, Ga. L. 1964, p. 499 et seq. (repeals Ga. L. 1945, pp. 236, 242; *Code Ann.* § 88-1118).

4. Where a witness testifies under oath that his answer to any question asked of him would incriminate him and comes within the constitutional immunities guaranteed to him, the court can demand no further testimony of the fact. Fifth Amendment, U. S. Constitution (*Code* § 1-805); Constitution of 1945 (*Code Ann* § 2-106); *Code* §§ 38-1102, 38-1205; *Empire Life Ins. Co. v. Einstein,* 12 Ga. App. 380, 384 (77 SE 209); *Bishop v. Bishop,* 157 Ga. 408 (121 SE 305); *Ga. R. & Bkg. Co. v. Lybrend,* 99 Ga. 421 (5) (27 SE 794); *Bass v. Bass,* 222 Ga. 378, 384 (149 SE2d 818).

5. Entrapment refers to the right of a party to impeach his own witness where he testifies to matters which are contradictory to statements previously made, authorizing a thorough and sifting cross examination of the party's own witness. *Code Ann.* § 38-1801. When defendant's counsel pleaded entrapment, the court first ruled that he would allow counsel to cross examine his witness because the witness had told counsel before trial that he had shot the deceased; but when called upon to testify he availed himself under oath of the constitutional privilege of refusing to answer on the ground that to answer might tend to incriminate him. Thereafter counsel attempted to cross examine the witness as to what this witness told counsel, about the circumstances surrounding this matter, and objection of opposing counsel thereto was sustained. The court erred in refusing to allow a thorough and sifting cross examination of the witness as to the entrapment. See *Piedmont Operating Co. v. Cummings,* 40 Ga. App. 397 (6) (149 SE 814); *Hause v. State,* 65 Ga. App. 765, 766 (16 SE2d 520). Thereafter, counsel for appellant moved to re-open the evidence and for a postponement until the next day in order to obtain another witness or witnesses who were present at the time the deceased was shot. In support of such motion counsel urged that previously he had known of only one witness as to the actual shooting, and that he had

been entrapped by that witness, who reneged on his promise to testify, but who, on cross examination, told of other witnesses who were present at the shooting, and counsel needed additional time in which to get other witnesses to testify in the case, none of whom he knew about until that morning. The court overruled this motion. Where a party has been, honestly and without indiscretion on his part, misled by a witness to rely on his giving testimony and has thereby been kept from summoning other witnesses who would testify to the same point, but whose testimony would not be needed if the misleading witness had not testified contrary to expectations (or had hidden behind his constitutional privilege to do so, such as here) it is error not to grant a continuance. See *Wilson v. Brandon,* 8 Ga. 136; *Williams v. Fambro,* 30 Ga. 232; *Maynard v. Cleveland,* 76 Ga. 52 (1, 2); *Ryder v. State,* 100 Ga. 528 (1, 2, 3) (28 SE 246, 38 LRA 721, 62 ASR 334); *Leverett v. Tift,* 6 Ga. App. 90 (64 SE 317). Accordingly, the court abused its discretion in not reopening and granting the motion which was that the case be "continued until tomorrow." The enumerations of error complaining of the above are meritorious, requiring a new trial. Compare *Mallin v. Mallin,* 226 Ga. 628 (176 SE2d 709).

6. The stipulation here was that the insured died of gunshot wounds. The circumstantial evidence points toward human agency as causing the firing of a gun. However, there was no direct evidence that any person or persons fired the gun, wounding the deceased. The evidence was sufficient to support the verdict. However, for reasons stated in Headnote 5 above, a new trial will be necessary.

*Judgment reversed. Jordan, P. J., and Quillian, J., concur.*
SUBMITTED JANUARY 8, 1971—DECIDED FEBRUARY 17, 1971.

*William A. Ingram,* for appellant.
*White & Crane, Jere F. White,* for appellee.

Ora Wilmont sued Interstate Life & Accident Insurance Co. upon a special accident insurance policy which had been issued to David Wilmont, Jr., naming Ora Wilmont, his mother, as beneficiary. The petition alleged that the named insured in said policy

was killed on October 15, 1967, and that the defendant was promptly notified of his death by the plaintiff who demanded payment under said policy, and the defendant refused to pay. She demanded judgment against the defendant in the amount of the insurance policy issued by it. The case came on for trial in Bartow Superior Court, and resulted in a verdict for the plaintiff, and the company appeals.

It was stipulated in the case that the deceased died of gunshot wounds and that the policy was in force at the time of his death. In addition, the policy itself was introduced into evidence. A female companion testified as to the events occurring the night the deceased was wounded, that he had no gun, that they drove to a cafe where they parked and talked to several people, that Wilmont went into the cafe, that she did not see anything to indicate that burglary or robbery was taking place, heard no arguments, but heard the noise of several gunshots in the yard, and that thereafter some men brought the deceased to her car and asked her to take him to the hospital where he died. She also testified that he was bleeding considerably in the chest area. She did not see any evidence as to where the shots came from, how they were made, by whom they were made, and that she did not see a gun after Wilmont was shot.

The pertinent parts of the accident policy here involved are as follows:

"Indemnity for Death by Accidental Means, as Defined Herein: Upon receipt of due proof that during the continuance of this policy in force, the Insured has sustained bodily injuries effected solely through violent, external, and accidental means, and that such bodily injuries have directly and independently of all other causes, caused the death of the Insured within ninety days from the time such injuries were so sustained, the Company will pay to the Beneficiary the Principal Sum . . . but subject to the exceptions below . . . Exceptions: No indemnity for Death by Accidental Means shall be payable if death results . . . (c) from injuries inflicted upon the Insured by himself, while sane or insane, or by any person other than burglars or robbers. . ."

The plaintiff rested her case and the defendant moved for a directed verdict, which was denied. The defendant offered in evi-

dence a certified copy of the death certificate, to which objection was made, but the same was allowed in evidence except the following: "How did the injury occur?" "Shot by Charles Washington in an argument," which was excluded as hearsay, and the court instructed the jury not to consider this portion of the certificate. The defendant placed a witness, Charles Washington, on the stand, and attempted to examine him with reference to the circumstances and facts surrounding the night at the cafe where the deceased was shot. To each question as to the circumstances and facts about the shooting of Wilmont this witness answered "I refuse to answer that question on the grounds that it may incriminate—tend to incriminate me or shall tend to bring infamy or disgrace or public contempt upon myself or my family." Counsel for defendant pleaded entrapment, stating that the wintess had agreed to appear and testify to the facts before the trial, and had also agreed, immediately before entering upon the trial, to testify. Counsel then appealed to the court to require him to answer the questions because he had been acquitted of murdering the deceased, that the questions could not possibly harm him, that they would not do any of the things the witness claimed; that the witness could not hide behind the Constitutions and laws protecting him against giving evidence. The court allowed him to ask the questions and cross examine the witness but did not compel the witness to answer.

Thereafter, one of plaintiff's attorneys, who was formerly the solicitor general who prosecuted the witness, Charles Washington, for murder, was called as a witness. This witness testified that Washington was indicted for the killing of the deceased, pleaded not guilty, and was acquitted. He objected to testifying as to unsworn statements made by the accused during the trial for murder as being pure hearsay, and the same was sustained.

After both parties had closed, each side moved for directed verdict, and the court overruled both motions. Counsel for appellant then moved that the evidence be re-opened and the case continued until the next day, since the witness Washington was the only witness that he had found who had agreed to testify in the case, who was there and saw what happened, and when called to testify refused to do so based upon his constitutional rights. Since counsel

was entrapped by this witness he sought a continuance until the morning, in order that he might attempt to get other witnesses who were there at the time to testify in the case, none of whom he knew about until the evidence that morning. This objection was likewise overruled.

The appeal was from the verdict and judgment with error enumerated on (1) the overruling of the appellant's timely-made motion for directed verdict; (2) the overruling of the various grounds of his motion for new trial; (3) the instruction to the jury not to consider the portion of the death certificate which states that the deceased was shot by Charles Washington in an argument; (4) the court's refusal to require the witness Washington to answer the various questions propounded to him; (5) the court's charge to the jury to disregard the alleged hearsay statement in the death certificate that the deceased was shot by Washington in an argument; (6) the ruling by the court that the appellant was not entrapped by the witness Washington after agreeing to testify as a witness and then seeking immunity from testifying; and (7) the court's refusal to grant appellant's motion to continue the case until the next day to permit appellant to procure and introduce other evidence that Wilmont was shot and killed by Washington who was not à burglar or robber at the time of the killing.